74733, 74769. LEADER NATIONAL INSURANCE COMPANY
v. GAYDON et al.
(363 SE2d 859)

CARLEY, Judge.

On March 14, 1984, appellee Carter Gaydon obtained an insurance policy from appellant Leader National Insurance Company, financing his policy through a premium finance company, Siuprem, Inc. On May 19, 1984, Siuprem, Inc. cancelled the policy as the result of appellee's failure to pay the premium. In so doing, Siuprem, Inc. utilized the provisions of former OCGA § 33-22-13 (Ga. L. 1969, pp. 561, 568).

As the result of an incident which occurred on September 1, 1984, a personal injury action was filed against appellee. Appellee then filed this third-party action against appellant, alleging that there had been no effective cancellation of his insurance policy. Appellee and appellant filed cross-motions for summary judgment. The trial court granted summary judgment in favor of appellee and denied appellant's motion for summary judgment. Although the evidence of record showed that Siuprem, Inc. had acted to cancel appellee's policy pursuant to and in full compliance with former OCGA § 33-22-13, the trial court held that the effective cancellation of appellee's policy would also have required compliance on the part of appellant with the notification provisions of former OCGA § 33-24-44 (Ga. L. 1975, p. 1242). Since appellant had failed to comply with that provision, the trial court found that there had been no effective cancellation of appellee's policy.

Pursuant to OCGA § 9-11-56 (h), appellant filed a direct appeal from the grant of summary judgment to appellee. Although appellant's separate application to this court for an interlocutory appeal from the denial of its cross-motion for summary judgment was superfluous (see *Southeast Ceramics v. Klem,* 246 Ga. 294 (271 SE2d 199) (1980), we granted it. Accordingly, the two appeals from the trial court's order are hereby consolidated for disposition in this single opinion. The sole issue for resolution is whether, absent appellant's compliance with former OCGA § 33-24-44, there was an effective cancellation of appellee's policy of insurance.

1. As previously indicated, only Siuprem, Inc. acted to cancel appellee's policy. Premium finance companies, such as Siuprem, Inc., are not in the business of insurance. However, it has been recognized that their role forms an " 'integral part of the insured-insurer relationship.' [Cit.]" *Perry & Co. v. New South Ins. Brokers,* 182 Ga. App. 84, 86-87 (2) (354 SE2d 852) (1987). As also previously indicated, it is former OCGA § 33-22-13 that constitutes the applicable statutory provision with regard to the procedure for cancellation of such policies as were financed by premium finance companies. That former provision provided, in relevant part, as follows: "(a) *When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement,* the insurance contract or contracts shall not be canceled by the premium finance company unless the cancellation is effectuated in accordance with this Code section. (b) Not less than ten days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement. (c) After

expiration of such ten-day period, the premium finance company may thereafter *in the name of the insured* cancel such insurance contract or contracts by *mailing to the insurer a notice of cancellation*; and the insurance contract *shall be canceled as if the notice of cancellation had been submitted by the insured himself*, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a *valid notice of cancellation to the insured* at his last known address and to the insurance agent or insurance broker indicated on the premium finance agreement." (Emphasis supplied.) Appellee's premium financing agreement did contain a power of attorney whereby Siuprem, Inc. was authorized to cancel, in the name of appellee, the policy with appellant. In acting to cancel appellee's policy, Siuprem, Inc. fully complied with all requirements of former OCGA § 33-22-13.

However, appellee urges and the trial court found that the cancellation of the policy was ineffective because there had not been additional compliance on the part of appellant with former OCGA § 33-24-44. That statute provided, in relevant part, that an insurer was to give written notice not less than 10 days prior to the cancellation of a policy "for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for the policy or any installment of premiums, whether payable directly to the insurer or indirectly under any premium finance plan or extension of credit. . . ." Former OCGA § 33-24-44 (e). However, subsection (a) of former OCGA § 33-24-44 provided: "Except as otherwise provided in this chapter, cancellation of a policy which by its terms and conditions may be *canceled by the insurer* shall be accomplished as prescribed in this Code section." (Emphasis supplied.) Appellee's policy was, of course, not cancelled by appellant, but by Siuprem, Inc., acting in appellee's name pursuant to the power of attorney. Thus, we must decide if compliance by appellant with former OCGA § 33-24-44 (e) was required even though it had not initiated the cancellation of appellee's policy.

The requirements of former OCGA § 33-24-44 "were designed to place upon the insurer the responsibility of taking adequate steps to do all within its power to make certain [its] insured was placed on notice that [his] insurance coverage had been cancelled." *Favati v. Nat. Property &c. Ins. Co.*, 153 Ga. App. 723, 724-725 (266 SE2d 359) (1980). Any need for the insurer to notify the insured of the cancellation of his policy would not exist where the cancellation had been initiated by the insured himself rather than by the insurer. Clearly, former OCGA § 33-22-13 provided a means whereby a cancellation on behalf of the insured could be accomplished. That statute provided that a premium finance company, which had secured a power of attorney to cancel a policy, could do so by acting in the name of the in-

sured after giving at least 10 days' notice to the insured that he was in default of his obligation to pay premiums for the coverage he had secured. On the other hand, former OCGA § 33-24-44 clearly provided a means whereby the insurer could take the initiative and cancel a policy for failure of the insured to pay for his coverage. Thus, if the premium finance company lacked the authority to cancel the policy pursuant to former OCGA § 33-22-13 or if the premium finance company had that authority but had failed to use it, the insurer could avail itself of the provisions of former OCGA § 33-24-44 and undertake the cancellation of a policy for which it had not been paid.

Under the trial court's interpretation of the former statutory provisions, before any cancellation initiated by a premium finance company could become effective, a defaulting insured would be entitled to notice from the premium finance company pursuant to OCGA § 33-22-13 that he had 10 days within which to cure the default, a notice pursuant to the same Code section that the policy had been cancelled, *and* an additional 10-days' notice from the insurer pursuant to former OCGA § 33-24-44 (e). It is clear that compliance by the premium finance company with former OCGA § 33-22-13 would obviate any necessity for the insurer's compliance with former OCGA § 33-24-44 (e). Pursuant to former OCGA § 33-22-13, the premium finance company was authorized to give the defaulting insured 10-days' notice prior to cancellation of his policy for failure to pay premiums. If the defaulting insured did not then cure his default after such notice had been sent, the premium financing company was then authorized, in the name of the insured himself, to cancel the policy and "the insurance contract *shall be canceled as if the notice of cancellation had been submitted by the insured himself. . . .*" (Emphasis supplied.) Former OCGA § 33-22-13 (c). It would be illogical to require that an insurer in receipt of an authorized notice of cancellation in the name of the insured himself also give 10-days' notice to that insured that the insurer proposed to cancel his policy.

Former OCGA § 33-22-13 simply provided a method by which cancellation of an insurance policy could, *in effect,* be initiated on behalf of an insured, which method was intended to be an alternative to the insurer's initiation of cancellation of the policy on its behalf pursuant to former OCGA § 33-24-44. " '[I]t is well established that a policy of insurance may be cancelled at any time before loss, by an agreement between the parties, and that such cancellation may be by the consent of the parties, express or implied from the circumstances, independently of the terms of the policy.' [Cit.] This is the rule in Georgia. . . ." *Davidson v. State Farm &c. Ins. Co.,* 161 Ga. App. 21, 24-25 (2) (288 SE2d 832) (1982). Cancellation of a policy pursuant to subsection (c) of former OCGA § 33-22-13 was based upon the consent of the parties, as evidenced by the submission of an authorized

notice of cancellation in the name of the insured after failure of that insured to cure the default within 10 days from the date of notification pursuant to subsection (b) of that Code section. That being true, it would not be necessary that the parties comply with any other provision, such as former OCGA § 33-24-44 (e), " ' "applicable to unilateral cancellation." [Cit.]' [Cit.]" *Davidson v. State Farm &c. Ins. Co.*, supra at 26 (2).

Reliance by appellee and by the trial court upon *Balboa Ins. Co. v. Hunter*, 165 Ga. App. 273 (299 SE2d 91) (1983) and *Thico Plan v. Ashkouti*, 171 Ga. App. 536, 538 (3) (320 SE2d 604) (1984) is misplaced. Both of those cases dealt with *subsection (c)* of former OCGA § 33-24-44 and the requirement established therein for the return of unearned premiums following cancellation initiated by the insurer. Neither case involved *subsection (e)* of former OCGA § 33-24-44 and its requirement that the insurer give the insured 10-days' notice of its intent to cancel. Appellee makes no contention that the cancellation of his policy is ineffective for any reason involving the return of unearned premiums to him and the consequent application of subsection (c) of former OCGA § 33-24-44. In *Balboa*, the policy was cancelled by the insurer, not the premium finance company. *Balboa* merely stands for the proposition that when an insurer elected to cancel a policy pursuant to former OCGA § 33-24-44, it was required to comply with all applicable provisions of that statute, including the provisions for the return of unearned premiums. Entirely unlike *Balboa*, supra, appellee's policy was cancelled by the premium finance company acting in his own name because, after notice, *he* did not pay the premiums that were earned by appellant. Entirely unlike *Thico Plan*, supra, appellee makes no contention that Siuprem, Inc.'s cancellation of his policy was wrongful and that Siuprem, Inc. failed to return to him unearned premiums that he had paid to it. Appellee's only contention is that he was not sent notice from appellant pursuant to former OCGA § 33-24-44 (e) in addition to the notice that he was sent by Siuprem, Inc. pursuant to former OCGA § 33-22-13. Nothing whatsoever in either *Balboa*, supra, or *Thico Plan*, supra, is inconsistent with our previous analysis that appellee's contention in this regard is erroneous.

*Existing* OCGA § 33-24-44 (e) now provides, in part, as follows: "Notice to the insured shall not be required by this Code section when a policy is canceled by an insurance premium finance company under a power of attorney contained in an insurance premium finance agreement which has been filed with the insurer in accordance with the provisions of Chapter 22 of this title." From the fact that the existing statute now specifically negates any requirement of such duplicative notice as was urged by appellee, it does not necessarily follow that such notice was an affirmative element of the former statutory

provision. " 'From the addition of words it may be presumed that the legislature intended some change in the existing law; but it is also presumed that the legislature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication. [Cit.]' [Cit.]" *C. W. Matthews Contracting Co. v. Capital Ford Truck Sales*, 149 Ga. App. 354, 356 (254 SE2d 426) (1979). Our previous discussion of the extent to which appellant was obligated to give notice to appellee of the cancellation of his policy is based entirely upon an interpretation of the former statutory provisions that were in effect at the times applicable to these appeals. As indicated in that discussion, under those former statutory provisions, there was no requirement that appellant give appellee an additional 10-days' notice prior to the effective cancellation of his policy. It follows that the effect of the General Assembly's enactment of existing OCGA § 33-24-44 (e) "was merely to make explicit that which the [former] statutory provisions had previously made only implicit. Thus, the result of the enactment of [existing] OCGA § [33-24-44 (e)] was only to change the clarity with which the statute originally spoke. . . ." *Colwell v. Voyager Cas. Ins. Co.*, 184 Ga. App. 842, 844 (363 SE2d 310) (1987).

It is clear that appellee's policy of insurance was effectively cancelled by the premium finance company for his nonpayment of premiums pursuant to former OCGA § 33-22-13. The trial court erred in granting summary judgment in favor of appellee and in denying appellant's motion for summary judgment.

2. Our holding in Division 1 of this opinion addresses the applicability of former OCGA § 33-24-44 because the parties and the trial court in this case relied exclusively upon that provision. However, all that we have held would likewise be applicable had reliance been upon the provisions of former OCGA § 33-24-45.

*Judgments reversed. Benham, J., concurs. Banke, P. J., concurs in judgment only.*

DECIDED DECEMBER 4, 1987 —
REHEARING DENIED DECEMBER 16, 1987 —

*Adele P. Grubbs, J. Milton Grubbs, George A. Edmund*, for appellant.
*William R. Johnson, Hall F. McKinley III*, for appellees.