A94A0229. THE STATE v. PETERS.
(444 SE2d 609)

SMITH, Judge.

This appeal presents a question of first impression in Georgia: whether the marital testimonial privilege under OCGA § 24-9-23 may be asserted when the marriage was entered into for the purpose of preventing the spouse's testimony. We conclude that the marital privilege statute is clear and unambiguous, that the facts of this case fall

within none of the legislative exceptions to the statute, and that the privilege may be invoked regardless of the underlying motives for a valid, existing marriage.

Randall Horace Peters was killed by a shotgun blast in his home on March 19, 1992. The police officer who investigated concluded there had been no burglary, but furniture and other items had been arranged to make it appear that the killing resulted from a burglary. The police officer testified at length to various hearsay statements made to him during the course of his investigation. Mr. Peters's wife, Linda Chapman Peters,[1] told the police that she saw a dark-coated, tall figure in the house that night, but she left the house and drove across town to her in-laws' house without calling the police. She gave inconsistent accounts of her whereabouts at the time of the murder, but she eventually admitted she had seen Walter Sargent that evening. Sargent also gave an inconsistent account of his whereabouts on the night of the murder but admitted he had seen Linda Peters and had driven by the Peters's house. Upon further questioning, both Peters and Sargent admitted that they had been conducting an illicit affair for several years. Eleven days after the murder Sargent's divorce became final, incorporating a settlement agreement that was concluded 12 days before the murder. Sargent also told the police that Peters had asked her husband for a divorce, and that a violent argument had ensued. The officer testified that Sargent eventually ended the police interview, saying "that if he talked any more or said anything else that he would get life or the electric chair."

The Walton County grand jury recommended that an indictment issue accusing Peters of the murder of her husband and that Sargent be granted use and derivative use immunity to testify. A rule nisi was entered on June 11, 1993, setting a hearing for June 24 on the State's motion to grant immunity to Sargent. On June 23, Sargent and Peters were married at the Clayton County courthouse, as appears from certified copies of the marriage license and application. No evidence was presented to controvert the validity of the marriage, and Sargent and Peters lived together as husband and wife from the time of the marriage until the date of the hearing.

Before the marriage took place, Peters told her daughters she probably would have to marry Sargent so he would not testify against her. Moreover, she was unsure whether the marriage would take place until she had consulted with her attorney about the legal ramifications of the testimony. The District Attorney stated for the record at the hearing that the investigation probably would not go forward

---

[1] Ms. Peters, as noted below, is now married to Mr. Sargent. As most of the events in question here occurred before that marriage, for the purpose of this opinion her former name is used.

without Sargent's testimony.

When Sargent was served with a subpoena to testify before the grand jury, he filed a motion to quash the subpoena. At the hearing on that motion, the trial court found that "the timing of the marriage was . . . solely to afford [Sargent] the protection of [OCGA § 24-9-23] so that he could avoid testifying at the Grand Jury." Nevertheless, the trial court found that a valid marriage existed between Peters and Sargent, regardless of its timing, and granted the motion to quash.

This court granted the State's application for interlocutory review over the objection of Peters that the trial court's order granting the motion to quash was not subject to appeal under OCGA § 5-7-1 (4). We disagree, in view of the remedial nature of the appeal statute, which is construed liberally to correct error which otherwise might work a miscarriage of justice, and before attachment of jeopardy. *State v. Strickman*, 253 Ga. 287, 288 (319 SE2d 864) (1984). "We hold that if a defendant moves before trial to exclude evidence on the ground that it was obtained in violation of law, the grant of such a motion — whatever its name — is subject to direct appeal on the part of the state." Id. In this case, as in *Strickman*, there would otherwise be no opportunity for appellate review of the trial court's ruling.

OCGA § 24-9-23 (a) provides: "Husband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other." The Georgia courts have applied this privilege based on the status of the husband and wife at the time testimony is sought or given; if the marriage has terminated by divorce at the time of testifying, the privilege does not apply. *Chadwick v. State*, 176 Ga. App. 296 (335 SE2d 674) (1985), aff'd 255 Ga. 376 (339 SE2d 717) (1986); see also *Gentry v. State*, 250 Ga. 802, 803 (2) (301 SE2d 273) (1983) (witness and defendant "not married at the time of the trial"). In these decisions the Georgia courts have not questioned the viability of the privilege itself, even in a case where the witness divorced and remarried the defendant shortly before trial. *Higgs v. State*, 256 Ga. 606, 608 (4) (351 SE2d 448) (1987).[2]

In determining the scope of this statutory privilege, we must "look diligently for the intention of the General Assembly." OCGA § 1-3-1. "Where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970). OCGA § 24-9-23 has had a long and eventful legislative history. Under Acts 1866, p. 138, which essentially incorporated the common-law rule,

---

[2] In *Higgs*, statements made to an investigator prior to the spouse's invocation of the privilege were admitted under an exception to the general hearsay rule. 256 Ga. at 608. That issue is not presently before us.

spouses were neither competent nor compellable to testify. An exception was created providing that a wife was competent but not compellable to testify against her husband for a criminal offense upon her person. Acts 1880-1881, p. 121. This exception later was expanded to include a criminal offense committed by either spouse upon the other. A wife could also testify against her husband in cases of abandonment. Acts 1927, p. 145. In 1957 the statute was amended to provide that a spouse was "competent, but not compellable" to testify. Ga. L. 1957, p. 53. Finally, subsection (b) was added in 1987, providing that the privilege shall not apply where the husband or wife is charged with a crime against the person of a minor child. Ga. L. 1987, p. 1155.[3]

This most recent legislative exception was construed in *Hamilton v. State*, 210 Ga. App. 398 (1) (436 SE2d 522) (1993). Hamilton was accused of statutory rape, but married the victim shortly before trial and appealed asserting the marital privilege. Citing the provisions of OCGA § 24-9-23 (b), this court held that the victim's testimony was compellable. Our decision rested entirely on the legislative intent of the statute: "Our legislature has determined that the public policy of protecting this State's children against crimes outweighs the policy of protecting the harmony and unity of marriage. We see no reason why the public policy considerations should be any different when the victim and the spouse are the same person." 210 Ga. App. at 399.

As we noted in *Hamilton*, the legislature has weighed the countervailing arguments and has determined that public policy requires the grant of certain privileges, including that established by OCGA § 24-9-23. See OCGA § 24-9-21. From time to time the legislature has amended the marital privilege statute to provide exceptions reflecting changes in public policy, but it has not provided an exception for the circumstances of this case. This "invites the application of the venerable principle of statutory construction *expressio unius est exclusio alterius*: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, *expressum facit cessare tacitum*, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. [Cit.]" *Roman v. Terrell*, 195 Ga. App. 219, 221 (3) (a) (393 SE2d 83) (1990). "From the addition of words it may be presumed that the legislature intended some change in the existing law; but it is also presumed that the legislature did not intend to effect a

---

[3] A bill was introduced, but not enacted, in the 1994 General Assembly to render the privilege inapplicable where the husband or wife is charged with a crime which occurred prior to the marriage. SB 609. This would have been directly applicable to the circumstances of this case.

greater change than is clearly apparent either by express declaration or by necessary implication." (Citations and punctuation omitted.) *Leader Nat. Ins. Co. v. Gaydon*, 185 Ga. App. 322, 327 (1) (363 SE2d 859) (1987).

The marital privilege has been criticized by the courts and by legal scholars for many years. See *Trammel v. United States*, 445 U. S. 40 (100 SC 906, 63 LE2d 186) (1980) (limiting the privilege under federal law to the witness-spouse). However, the states have addressed the marital privilege legislatively rather than judicially.[4] Allegations that a marriage was contracted solely for the purpose of barring testimony have been considered by a number of state courts, and they have overwhelmingly declined to create such a judicial exception to the marital privilege. See, e.g., *State v. Williams*, 133 Ariz. 220 (650 P2d 1202, 1213-1214) (1982); *State v. Levy*, 160 NW2d 460, 464-465 (Iowa 1968); see also 13 ALR4th 1305 and cases cited therein. A number of states have created such an exception by statute. See, e.g., *In re Marriage of Bozarth*, 779 P2d 1346 (Colo. 1989) (applying 6A CRS § 13-90-107 (1) (a), later repealed).

*Osborne v. State*, 623 P2d 784 (Alaska 1981), cited by the State, does not provide authority to the contrary because of the unique character of the Alaska rules of evidence and criminal procedure. Those rules are promulgated by the Alaska Supreme Court under its rule-making power, and by their own terms they "may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice." Alaska R.Crim.P. 53; 623 P2d at 787, n. 4.

While it is true, as the State contends, that "[t]he object of all legal investigation is the discovery of truth," OCGA § 24-1-2, any privilege by its very nature impedes the discovery of truth. As the Arizona Supreme Court observed, "[t]he choice of whether the marital privilege should be recognized and under what circumstances is not only an evidentiary question but involves a determination of the rights and status which flow from the institution of marriage. [Cit.] Nor is this rule one which was made by the courts and which they are, therefore, free to rescind when they conclude that it no longer serves its purpose. [Cit.] Thus, the policy determination involving abrogation of the rule is an appropriate subject for legislative determination . . . . [O]ur legislature has chosen to retain the marital privilege . . . . By doing so, it has made it clear that it places paramount importance on the marital relationship and believes the privilege is

---

[4] In *Trammel*, supra, the United States Supreme Court observed that 33 states and the District of Columbia maintain the marital privilege in some form, in all cases through statutory enactment. The remaining 17 states have abolished the privilege, likewise by statute. 445 U. S. at 48-49, n. 9.

necessary to protect that relationship. . . ." *Williams*, supra, 650 P2d at 1214.

The circumstances of this case amply demonstrate the potential for abuse of the far-reaching protection granted by the marital testimonial privilege. However, the General Assembly has determined the limits of that privilege, and we are not permitted to alter that determination by judicial amendment. Accordingly, the decision of the trial court must be affirmed.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Cooper, Andrews, Johnson and Blackburn, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

In my view, this Court lacks jurisdiction to consider the issue raised by the State in this appeal. In criminal cases the State may appeal only under the circumstances provided by OCGA § 5-7-1. The first two sections of this statute are readily seen to be inapplicable. The proper definition of "plea in bar" as stated in *State v. Land-O-Sun Dairies*, 204 Ga. App. 485, 486 (419 SE2d 743), shows that OCGA § 5-7-1 (3) is inapplicable.

In *State v. Strickman*, 253 Ga. 287 (319 SE2d 864), the Supreme Court rejected a restrictive view of OCGA § 5-7-1 (4) and noted that "[b]eing remedial in nature, it should be construed liberally." Id. at 288. Nonetheless, remedial construction is not a license to expand the parameters of a statute without bounds.

The Supreme Court states its holding in *State v. Strickman* to be "that if a defendant moves before trial to exclude evidence on the ground that it was obtained in violation of law, the grant of such a motion — whatever its name — is subject to direct appeal on the part of the state." The circumstances of the case sub judice simply do not fit within that holding. There has been no motion to exclude evidence on the ground that it was obtained in violation of law. Instead, the grant of the motion to quash subpoena in the case sub judice has prevented the State from disregarding the marital privilege in the hope of possibly obtaining some relevant evidence at some time in the future. The Supreme Court's language in *State v. Strickman* and the common understanding of a motion to suppress evidence both relate exclusively to limitations placed upon the use of evidence *already* obtained by the State and do not relate to attempts by the State to obtain evidence.

DECIDED MAY 27, 1994.

*Alan A. Cook, District Attorney*, for appellant.
*Michael R. Jones, Dickinson, Noel & Mixson, David F. Dickin-*

*son,* for appellee.