[No. B070986. Second Dist., Div. Three. June 9, 1994.]

LARRY L. HOLLAND et al., Plaintiffs and Appellants, v. STERLING CASUALTY INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Robert L. Porter for Plaintiffs and Appellants.

Sheehan & Booser and Howard V. Sheehan, Jr., for Defendant and Respondent.

**OPINION**

**CROSKEY, Acting P. J.**—Larry Holland and his daughter Shelley Holland appeal from a judgment on the pleadings rendered in favor of defendant Sterling Casualty Insurance Company (Sterling) after the trial court found that (1) Sterling's policy of automobile insurance for appellants had been cancelled by the financial institution which supplied the premiums for the policy, and (2) therefore there was no policy in effect which would support the appellants' causes of action against Sterling for breach of the implied covenant of good faith and fair dealing and breach of contract. We find the trial court correctly construed the governing provision in the Insurance Code and we affirm the judgment.

## Background of the Case

Sterling issued an auto insurance policy to plaintiff Larry Holland (plaintiff) for a Toyota Celica for a one-year period commencing May 3, 1985. Plaintiff's daughter Shelley Holland (Shelley or collectively with plaintiff the Hollands) was also an insured driver under the policy. Defendant Central Bank doing business as Coast Program (Bank) financed the insurance premiums for the policy.

Insurance Code section 673 permits a lender such as Bank, who has advanced the premium for an insurance policy and who has received, from the insured, the insured's right to cancel the policy, to give written notice of intent to cancel the policy. Certain qualifications, discussed *post*, apply to the lender's exercise of the right of cancellation.

According to Bank, it served plaintiff and Sterling with notices of its intention to exercise the right of cancellation. Sterling then cancelled the auto policy. Five days after the date of cancellation, Shelley drove the Toyota and struck and injured a pedestrian. Sterling denied coverage and refused to recognize the pedestrian's claim. The pedestrian filed suit against the Hollands.

Plaintiff then filed the instant action, naming as defendants Sterling, Bank and the insurance broker, FGS. When Shelley was named as a cross-defendant, she cross-complained against Sterling, Bank and FGS. Plaintiff and Shelley both alleged causes of action against Sterling for breach of the implied covenant of good faith and fair dealing and for breach of contract.

Sterling brought motions for judgment on the pleadings and the trial court granted the motions. The court found that because the policy had been cancelled prior to the time Shelley hit the pedestrian, there was no implied covenant or contract of insurance which could be breached by Sterling. On that basis, the court also denied the Hollands' request for leave to amend. The court awarded judgment against the Hollands in favor of Sterling. It is from this judgment that the Hollands appeal; they challenge both the trial court's construction of Insurance Code section 673 (section 673)[1] and the court's denial of leave to amend.

---

[1]Section 673 states in relevant part: "(a) As used in this section, 'exercise the right to cancel' means the act of formally electing to use the right of the insured to cancel any insurance policy in accordance with and subject to the provisions of that policy when the right to use that right of the insured has been transferred or assigned by the insured in writing executed by, or on behalf of, the insured to a lender who has advanced to the insurer the premium for the policy. The transfer or assignment may be by power of attorney or other

DISCUSSION

## 1. *Introduction*

When an insured defaults on its payment obligation to a lender under a premium payment loan agreement, and when the insured has transferred to that lender its right of cancellation, the lender may exercise that right of cancellation in accordance with the provisions in section 673. The lender must mail written notice to the insured and the insurer of the exercise of the right to cancel. The written notice must specify an effective date of cancellation and said date must be "five days or more after the date of mailing of such notice." (§ 673, subd. (c).) Thereafter, unless the insured has cured its default(s), the lender must mail to the insurer a written confirmation of the effective date of the cancellation. This second mailing is to be made within

---

document. The transfer or assignment may, but need not, be accompanied by an assignment of any unearned premium due the insured on cancellation.

"(b) No lender shall exercise the right to cancel a financed insurance policy because of the default of the insured under a premium payment loan agreement except in accordance with this section.

"(c) Written notice of the exercise of the right to cancel shall be mailed by the lender to the insurer and to the insured at the address shown on the premium payment loan agreement or his or her last known address, specifying a date five days or more after the date of mailing of such notice as the effective date of cancellation. Any insurer may, in writing delivered to the lender, waive, generally or specifically, the right to receive such notice or notices. A copy of such notice may be mailed to the producer of record if known to the lender, but failure to do so shall not affect any rights granted by this section. This subdivision shall not apply to an industrial loan company.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(e) A written exercise of that right containing a confirmation of the effective date of cancellation shall be mailed by the lender to the insurer within five days following that effective date of cancellation specified in the notice described in subdivision (c) unless the insured has cured any and all defaults. Cancellation shall be effective on the financed insurance policy without requiring the return of the insurance policy or insurance policies, except as provided in subdivisions (f) and (g), on the confirmation date specified in the written exercise of that right. This subdivision shall not apply to an industrial loan company.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(i) A lender which sends a written exercise of cancellation right or a written notice of cancellation to an insurer, as provided in subdivision (c), or subdivision (d) in the case of an industrial loan company, thereby represents that he or she has a valid right so to do and to receive the unearned premium. If the lender thereby accomplishes the cancellation and receives an unearned premium, such representation shall be conclusive as between the insurer and the lender. An insurer relying upon the written exercise of that right containing a confirmation of cancellation date and giving, when applicable, notice as required by subdivision (e), shall be relieved from complying with any other duty or form of cancellation required by this code.

"(j) This section shall not apply where the insurer exercises its own right to cancel the policy for nonpayment of premium, direct or indirect, or otherwise. Such a cancellation shall be subject to all applicable provisions of the policy, this code, except this section, and any rights of the lender of which the insurer has written notice."

five days following the effective date of cancellation. (§ 673, subd. (e).) Thus, section 673 provides, in effect, for (1) a written notice of intent to cancel, with a specific cancellation date, (2) a right of the insured to cure its defaults, and (3) a confirmation notice by the lender if the defaults are not cured.

In the case before us, Bank's subdivision (e) notice of confirmation of cancellation states in part: "To the named insurance company[:] Central Bank herein acknowledges and affirms that written notice of the exercise of its right and intent to cancel has been mailed to the insurer and insured pursuant to section 673 of the California Insurance Code specifying a date five days or more after the date of said notices mailing as the effective date of cancellation[;] that the insured has failed to cure any and all defects as of the date of this cancellation notice and therefore lender instructs said insurer to cancel[,] on the date herein specified in accordance with our note and security agreement with the insured and in accordance with the notice of financed premium with the insurer[,] any existing coverages and to return all unearned premiums to the lender immediately." The stated date of cancellation is March 25, 1986.

This confirmation of cancellation notice was mailed by Bank to plaintiff and to Sterling. It bears a postmark date of March 28, 1986. The Hollands do not dispute receiving this notice. According to the Hollands's opening brief on appeal, they contend that Bank never mailed to plaintiff the five-day "pre-cancellation notice" required by subdivision (c) of section 673; they also contend that through discovery they found that Bank's "own records of mailing are devoid of any record that the 5 day notice was ever mailed." Sterling disputes that plaintiff did not receive the subdivision (c) pre-cancellation notice but argues that in any event, this factual dispute is not relevant to the true issue on appeal, which Sterling defines as the rights of an insurer under subdivision (i) of section 673.

### 2. Under Section 673 the Notice Burden Is on the Lender Not the Insurer

It is clear from reading section 673 that it is the lender who controls cancellation of the policy when (1) the insured defaults in meeting its obligations and (2) the insured has transferred to the lender the insured's right of cancellation. Assuming arguendo that Bank did *not* mail a pre-cancellation notice to plaintiff, the issue is whether *Sterling* can be held liable for Bank's wrongful cancelling of the plaintiff's policy when Sterling cancelled the policy in accordance with the cancellation notices sent to Sterling by Bank. We find Sterling cannot be held liable.

Section 673, subdivision (i), clearly provides that when a premium financing lender gives an insurer written notice that it is exercising the right to cancel a policy, the lender thereby represents to the insurer that it has the right to exercise said right of cancellation; and if the lender thereby obtains such a cancellation, the lender's representation is conclusive as between the lender and the insurer. By cancelling the policy, such an insurer (here, Sterling) acts in accordance with section 673. That section does not impose any additional notice requirements on the insurer.

The precancellation notices to insurer and insured serve different functions. (*Hoffman* v. *Citadel General Assurance, Ltd.* (1987) 194 Cal.App.3d 1356, 1363 [240 Cal.Rptr. 253].) Notice to the insurer is for the benefit of the insurer so that the insurer does not pay out on a postcancellation loss. (*Ibid.*) Obviously, notice to the insured is for the insured's benefit, so that it can cure its defaults. If the lender does not send the precancellation notice to the insured, it must be the lender who is responsible to the insured, not the insurer. Subdivision (i) of section 673 specifically states that when the insurer relies on the confirmation of cancellation notice served by the lender, the insurer "shall be relieved from complying with any other duty or form of cancellation required by [the Insurance Code]."[2] This obviously negates any obligation on the part of the insurer to send any further notice to the insured.

Subdivision (b) of section 673 states that when a lender elects to exercise the right to cancel, it *must* exercise it "in accordance with this section." If the lender does not, the lender must bear the consequences, including the most obvious potential consequence of the insured having had its coverage cancelled without a section 673 warning. Relief for the Hollands, if any, lies with Bank (with whom they have apparently already settled).

### 3. *The Hollands' Request for Leave to Amend Was Properly Denied*

On appeal, the Hollands contend they should have been given leave to amend their respective pleadings to allege that Bank did not properly exercise the right to cancel the policy and that therefore Sterling itself cancelled the policy and should have done so in accordance with the cancellation provisions in the policy. We have already stated that even if Bank had failed to give the Hollands a precancellation notice, under subdivision (i) of section 673, Sterling cannot be held liable for such omission. There would be no purpose served by an amendment to allege the violation of an obligation which we have concluded does not exist. Given our analysis of section 673, we find the Hollands' request for leave to amend was properly denied.

---

[2] It is the provisions in subdivision (i) which make the Hollands' reliance on *Kende Leasing* v. *A.I. Credit* (1987) 217 N.J. Super. 101 [524 A.2d 1306] unavailing.

## DISPOSITION

The judgment appealed from is affirmed. Costs on appeal to Sterling.

Kitching, J., and Parkin, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.