52 P.3d 494 (2002)
147 Wash.2d 148
OLIVINE CORPORATION, a Washington corporation, Respondent,
v.
UNITED CAPITOL INSURANCE COMPANY, a Wisconsin corporation, Petitioner.
No. 71095-3.
Supreme Court of Washington, En Banc.
Argued February 12, 2002.
Decided August 22, 2002.
*495 Grant Law Firm, Jeffrey Grant, Benjamin Schwartzman, Seattle, for Petitioner.
Steven Hager, Ludwigson Thompson Hayes & Bell, Craig Hayes, Bellingham, for Respondent.
SANDERS, J.
We address the consequences of a requested cancellation of an insurance policy by a premium finance company. This policy had two named insureds, one of which had given the finance company a power of attorney to request cancellation of the policy in the event of nonpayments of premiums. That insured also received notice of the requested cancellation. The other insured had not given the finance company a power of attorney, and was not notified of the requested cancellation. The question is whether the policy remains in effect for the benefit of the insured who received no notice and who did not give the premium finance company a power of attorney. The trial court held it did, and rendered summary judgment to the insured. On appeal the Court of Appeals agreed, and affirmed. We granted review, and now affirm in part and reverse in part.

FACTS
Olivine Corporation owned and operated a waste incineration site. In 1997 it executed a lease-purchase agreement with Clearwater Resource Recovery, Inc. By its terms Clearwater *496 was to initially lease the premises from Olivine and eventually take over ownership of the incinerator site. The lease agreement also required Clearwater to obtain pollution liability insurance, which it did from United Capitol Insurance Company. The policy was a one-year claims-made policy, effective as of October 27, 1997. Olivine was initially classified as an additional named insured, but some time in early 1998 the declarations page was amended to make both Clearwater and Olivine named insureds.
Clearwater financed the policy through TEPCO Premium Finance, LLC.[1] TEPCO obtained a power of attorney from Clearwater to cancel the policy if Clearwater failed to make payments. TEPCO did not obtain a corresponding power of attorney from Olivine.
Trouble began in early 1998 when Clearwater stopped paying TEPCO. On February 2, 1998, TEPCO sent Clearwater a written notice of its intent to cancel the insurance policy if the premium was not paid within 10 days. Clearwater did not respond and did not pay. TEPCO did not notify Olivine of Clearwater's failure to pay, nor of TEPCO's intent to cancel the policy. After the 10 day period expired TEPCO sent United Capitol a notice of cancellation requesting termination of the policy as of February 17, 1998. TEPCO did not provide Olivine a copy of the notice of cancellation, nor was Olivine otherwise informed the policy was purportedly canceled.
Olivine received a notice from the Whatcom County Health Department on March 12, 1998, informing it that its solid waste handling permit would be revoked, and Olivine would be required to clean up hazardous waste and toxic substances at the leased premises. Apparently Clearwater had allowed the leachate tanks to fill and overflow, and had left ash and tires piled at the site. Clearwater had also dumped incinerator ash on a disallowed site, causing an inspection by the Washington State Department of Ecology. As a result of Clearwater's operation of the incinerator, Olivine's solid waste handling permit was eventually revoked. Olivine notified United Capitol of the health department's claim and requested United Capitol pay for the clean-up costs. When United Capitol initially indicated the claim was covered, Olivine began arranging to have the site cleaned up in early April.
However on May 19, 1998, United Capitol informed Olivine the policy had been canceled effective February 17, 1998. Olivine responded by filing this action in the Superior Court for Whatcom County seeking a declaratory judgment that the policy was still in effect on March 12 when the health department's notice was received. Olivine also sought damages to compensate for the costs it incurred cleaning up the incinerator site, together with attorney fees and costs.
Olivine moved in superior court for partial summary judgment "determining that the contractor[']s pollution liability coverage was in effect at the time the claim was made." Clerk's Papers (CP) at 413. United Capitol cross-moved for a summary judgment of dismissal. The court held Olivine was entitled to notice of TEPCO's request for cancellation under RCW 48.18.290[2] and RCW 48.56.110. The court reasoned since all concerned other than Olivine knew of the cancellation, the policy must still be in effect with respect to Olivine.
Olivine again moved for partial summary judgment, this time to establish entitlement to monetary damages, costs, and reasonable attorney fees. The superior court eventually granted final summary judgment in favor of Olivine, awarding $434,300.17 in damages, $40,000 in attorney fees, and costs in the amount of $550.99, for a total of $474,851.16.
United Capitol appealed the summary judgment, and Olivine cross-appealed claiming the trial court abused its discretion when it awarded attorney fees in the amount of $40,000 instead of the requested amount of approximately $144,000. The Court of Appeals affirmed, over a dissent, holding United Capitol had a duty to notify Olivine of TEPCO's *497 cancellation. Olivine Corp. v. United Capitol Ins. Co., 105 Wash.App. 194, 198-201, 19 P.3d 1089 (2001). According to the Court of Appeals, United Capitol's failure to carry out this duty meant the policy was still in effect when the health department sent its notice on March 12, 1998. Id. at 199, 19 P.3d 1089.
The Court of Appeals also affirmed the trial court's award of attorney fees, concluding the court exercised sound discretion when it awarded fees in a lesser amount than requested. Id. at 202-03, 19 P.3d 1089. United Capitol does not here challenge the court's decision on that issue. Consequently, the issues we address here are whether the policy was effectively canceled as to Olivine and the appropriateness of the damage award to Olivine. See RAP 13.7(b).

ANALYSIS
We review summary judgments de novo. Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is proper only when pleadings, depositions, admissions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 642, 618 P.2d 96 (1980).
The answer to this appeal is found in the insurance code, Title 48 RCW, and prior precedent. These sources reveal a premium finance company has no independent right to cancel the financed policy because the parties to an insurance contract are the insured and the insurer, not the finance company. See RCW 48.56.110(1);[3]cf. Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385, 715 P.2d 1133 (1986). If a finance company has the right to request cancellation of a policy on behalf of an insured, it is typically granted such right in the finance agreement with the insured via a power of attorney. See RCW 48.56.110(1); 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 31.43, at 31-55 (3d ed.1995); 6 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 39.10, at 400 (1998). Powers of attorney create an agency relationship and are strictly construed to grant only those powers specified in the instrument. Bryant v. Bryant, 125 Wash.2d 113, 118, 882 P.2d 169 (1994). When there are multiple insureds, a premium finance company may request cancellation only with respect to those insureds that have granted the company such authority via a power of attorney or otherwise.
Additionally the Insurance Premium Finance Company Act, chapter 48.56 RCW, imposes various restrictions and obligations on a premium finance company's ability to effectuate the cancellation of a policy by virtue of a power of attorney. The finance company must provide the insured at least 10 days' written notice of its intent to cancel. RCW 48.56.110(2). Only if the default is not cured within the 10 day period may the *498 company then request the insurer to cancel the policy by mailing the insurer a notice of cancellation. RCW 48.56.110(3). See also Ins. Mgmt., Inc. v. Guptill, 16 Wash.App. 226, 231, 554 P.2d 359 (1976). Besides mailing a notice of cancellation to the insurer, the premium finance company must also provide the insured a copy of the notice of cancellation. RCW 48.56.110(3).
We have previously held the word "insured," when used in an insurance policy, includes "any person entitled to protection under the policy." Holthe v. Iskowitz, 31 Wash.2d 533, 543, 197 P.2d 999 (1948). This is consistent with the dictionary definition of "insured":
The person who obtains or is otherwise covered by insurance on his health, life, or property. The "insured" in a policy is not limited to the insured named in the policy, but applies to anyone who is insured under the policy.
Black's Law Dictionary 808 (6th ed.1990). Under the United Capitol policy, "insured" includes any person or organization designated as such in the declarations page. This declarations page was amended some time in early 1998 to add Olivine as another named insured. Olivine is therefore an "insured" pursuant to RCW 48.56.110.[4]
Consequently, TEPCO was statutorily required to provide Olivine at least 10 days' notice of its intent to cancel the policy based on Clearwater's failure to pay premiums. See RCW 48.56.110(2). In addition, TEPCO was required to mail Olivine a copy of the notice of cancellation whereby TEPCO requested United Capitol cancel the policy as of February 17, 1998. See RCW 48.56.110(3). Olivine never received any notice of the impending cancellation of the policy from TEPCOor anyone else.
However TEPCO is not a party before us. Therefore we do not address the consequences of TEPCO's failure to provide Olivine notice. Rather, we instead consider whether the insurance code also required United Capitol to notify Olivine of TEPCO's request for cancellation, and, if so, Olivine's remedy, if any.
The Insurance Premium Finance Company Act requires an insurer in United Capitol's position to notify the insured of a policy's impending cancellation at a premium finance company's request if such is required by statute, regulation, or contract.

All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.
RCW 48.56.110(4) (emphasis added). Both the trial court and the Court of Appeals relied on this provision to impose on United Capitol the duty to notify Olivine of the impending policy cancellation. Olivine Corp., 105 Wash.App. at 199, 19 P.3d 1089; CP at 312. However, RCW 48.56.110(4) does not apply to these facts because there is no third party to which notice could be given. The lower courts' reliance on this provision was premised on the misunderstanding Olivine was a third party by virtue of its capacity as an additional named insured and owner of the covered property. See Olivine Corp., 105 Wash.App. at 199, 19 P.3d 1089 (characterizing Olivine as an "interested third party" entitled to notice when RCW 48.56.110(4) is read together with RCW 48.18.290(1)); CP at 312 (trial court characterizing Olivine as a "`person shown by the policy to have an interest'" therein and therefore entitled to *499 notice under RCW 48.56.110(4) and RCW 48.18.290(1)(a) and (b)). But Olivine was a named insured, which means it cannot also be a third party entitled to notice under RCW 48.56.110(4). To hold otherwise would defeat the language of subsection (4) since that provision requires the insurer to give notice on "behalf of itself or the insured." Id. (emphasis added). It makes little sense to require an insurer to give notice to the insured on behalf of the insured. Therefore, a requirement that United Capitol notify Olivine of the impending cancellation at the request of TEPCO cannot be based on RCW 48.56.110(4).
Although we disagree with the lower courts' reliance on RCW 48.56.110(4), we do approve reliance on RCW 48.18.290albeit on different grounds. Aided in large part by the trial court's reasoning on this point, we conclude as follows.
The record shows that, as between Clearwater and Olivine, only Clearwater had given TEPCO power of attorney to cancel the policy. Construing this power of attorney strictly, as we must, see Bryant, 125 Wash.2d at 118, 882 P.2d 169, TEPCO had no authority to request cancellation of the United Capitol policy with respect to Olivine's interests therein.[5] TEPCO was neither a party to the insurance contract nor did it enjoy Olivine's right to cancel the policy with respect to Olivine's interests. Olivine did not request or otherwise acquiesce[6] in the policy's cancellationOlivine was not even aware of the cancellation until after the fact. Yet, the policy was purportedly canceled with respect to both Clearwater and Olivine. The only conclusion we can draw is that the policy was purportedly canceled with respect to Olivine when United Capitol accepted TEPCO's unconditional request for cancellation.
We are aware that cancellation by a premium finance company ideally is to be treated as cancellation by the insured:
After expiration of [the required] ten day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts.
RCW 48.56.110(3) (emphasis added). See also, e.g., Leader Nat'l Ins. Co. v. Gaydon, 185 Ga.App. 322, 363 S.E.2d 859, 861 (1987); Atwater v. Dist. of Columbia Dep't of Consumer & Regulatory Affairs, 566 A.2d 462, 470 (D.C.App.1989); Couch on Insurance, supra, § 31:43, at 31-57; Holmes' Appleman on Insurance, supra, § 39.10, at 400. But RCW 48.56.110(3) was apparently designed to address a situation in which there is one insurer, one premium finance company, and one insured;[7] or if there are multiple *500 insureds, a situation in which each of the insured has given the premium finance company authority to cancel their insured interests.[8] This provision cannot be harmoniously applied to this situation, in which only one of the insureds has given the premium finance company a power of attorney yet the cancellation purportedly applies to other insureds not associated with that power of attorney. A premium finance company may request a policy cancellation only as far as authorized by its power of attorney. See Bryant, 125 Wash.2d at 118, 882 P.2d 169. Since it is not a party to the insurance contract, a premium finance company without a power of attorney would have no authority to request cancellation of the policy at all. Assuming for the sake of argument Clearwater had not given TEPCO a power of attorney but that United Capitol still had purported to cancel this policy at TEPCO's request, we would treat the policy as canceled by United Capitol. Cf. Safeco Ins. Co. v. Irish, 37 Wash.App. 554, 558, 681 P.2d 1294 (1984) (noting cancellation "refers to a unilateral act of the insurer terminating coverage during the policy term"). The presence of multiple insureds does not defeat the logic of this principle. A premium finance company can request cancellation of a policy only within the constraints of its power of attorney, and if the policy is canceled beyond the scope of the finance company's delegated authority; to that extent the cancellation must be treated as cancellation by the insurer.[9]
Consequently, this purported cancellation is also governed by RCW 48.18.290, the statute controlling cancellations by an insurer. If the policy is canceled due to nonpayment of premiums, as it was in this case, the insurer must deliver written notice of cancellation to the named insured no less than 10 days before the cancellation is to take effect. RCW 48.18.290(1)(a). It is undisputed United Capitol did not provide Olivine such notice, even though Olivine was a named insured. Olivine did not learn of the cancellation until May 19, 1998, more than three months after the February 17, 1998, cancellation date.
This presents the question of what should be the appropriate remedy for United Capitol's failure to comply with the notice requirements of RCW 48.18.290. To answer this question we look both to the policy considerations underlying the notice requirements in RCW 48.18.290 and the structure of the statute itself.
*501 The purpose of the notice requirements in the insurance code is to enable the insuredsall of themto take appropriate action in the face of impending cancellation of an existing policy. See, e.g., Grubbs v. Credit Gen. Ins. Co., 327 Ark. 479, 939 S.W.2d 290, 292 (1997); Majernicek v. Hartford Cas. Ins. Co., 240 Conn. 86, 688 A.2d 1330, 1333 (1997); Kotlar v. Hartford Fire Ins. Co., 83 Cal. App.4th 1116, 100 Cal.Rptr.2d 246, 250 (2000); Black v. Globe Am. Cas. Co., 19 Ohio App.3d 58, 482 N.E.2d 1278, 1281 (1984). Notice enables the insured to adjust by either making the payments in default, obtaining other insurance protection, or preparing to proceed without insurance protection. See Capuano v. Kemper Ins. Cos., 433 A.2d 949, 953 (R.I.1981). That purpose was not realized here. Olivine was left without notice of the impending cancellation of the United Capitol policy and was deprived of the opportunity to take action appropriate for its needs and in time to protect its interests in the leased premises.
In addition, the language of RCW 48.18.290 makes compliance with its notice requirements a condition precedent to effective cancellation by the insurer:
(1) Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer ... may be effected as to any interest only upon compliance with the following:

(a) Written notice of such cancellation, accompanied by the actual reason therefor, must be actually delivered or mailed to the named insured not less than forty-five days prior to the effective date of the cancellation except for cancellation of insurance policies for nonpayment of premiums, which notice shall be not less than ten days prior to such date and except for cancellation of fire insurance policies under chapter 48.53 RCW, which notice shall not be less than five days prior to such date ....
RCW 48.18.290 (emphasis added). See also Foster v. Halifax Ins. Co. of New York, 56 Wash.2d 148, 149, 351 P.2d 931 (1960) (holding return of premium was not a condition precedent to effective cancellation, leaving mailing of notice of cancellation as the only such condition). The policy at issue was cancelable at the option of United Capitol. It enabled United Capitol to cancel by mailing or delivering a written notice of cancellation to the first named insured, as shown on the declarations page of the policy.[10] Nevertheless, United Capitol's ability to effectuate a cancellation "as to any interest" was conditioned on its compliance with the notice requirements of RCW 48.18.290(1)(a). Its failure to comply with these notice requirements left the policy in effect with respect to Olivine. Cf., e.g., Blomquist v. Grays Harbor County Med. Serv. Corp., 48 Wash.2d 718, 721, 296 P.2d 319 (1956) (noting cancellation of policy must generally "be in accordance with the provisions of the policy" to be effective); Felician v. State Farm Mut. Ins. Co., 113 Misc.2d 825, 449 N.Y.S.2d 887, 890 (1982); Nationwide Mut. Ins. Co. v. Davis, 7 N.C.App. 152, 171 S.E.2d 601, 604 (1970).
We recognize most courts have held an insurer is not required to notify the insured of a policy's impending cancellation at the request of a premium finance company. See, e.g., Leader Nat'l Ins. Co., 363 S.E.2d at 861-62; Atwater, 566 A.2d at 470; Holland v. Sterling Cas. Ins. Co., 25 Cal.App.4th 1059, 30 Cal.Rptr.2d 809, 811 (1994); Ingram v. Nationwide Mut. Ins. Co., 5 N.C.App. 255, 168 S.E.2d 224, 226-27 (1969); Hayes v. Hartford Accident & Indem. Co., 274 N.C. 73, 161 S.E.2d 552, 556-57, 559 (1968); Tate v. Hamilton Ins. Co., 466 So.2d 1205, 1206 (Fla.Dist.Ct.App.1985). But those decisions were based on different facts. All but one addressed the obligations of an insurer in a cancellation situation involving one finance company, one insurer, and a single insured. Leader Nat'l Ins. Co., 363 S.E.2d at 860; Atwater, 566 A.2d at 464; Ingram, 168 S.E.2d at 225; Hayes, 274 N.C. at 74, 161 S.E.2d 552; Tate, 466 So.2d at 1206. The *502 exception is Holland, which did involve two insureds, a father and a daughter. Holland, 30 Cal.Rptr.2d at 809-10. However, Holland is also distinguishable because the two insureds were treated as a single insured. Id. In addition, there was no dispute both insureds received notice of cancellation from the finance company. Id. at 811. These decisions are therefore of limited guidance in our situation.
Although we agree with the lower court's conclusion United Capitol's failure to comply with the notice requirements of RCW 48.18.290 left the policy in effect with respect to Olivine, we must nonetheless address whether the trial court erred when it granted summary judgment in favor of Olivine on the issue of damages.[11] United Capitol argues the trial court's order granting Olivine summary judgment on the issue of damages was improper because genuine issues of material fact remained. Specifically, United Capitol maintains: (1) The trial court had not ruled on the issues of coverage or liability; (2) there were questions of fact remaining as to the amount of damages to which Olivine was entitled; (3) United Capitol had not had an opportunity to complete its discovery; and (4) the amount of damages had not been proved and included amounts not yet incurred or paid.
Determining whether there is coverage is a two-step process. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 730-31, 837 P.2d 1000 (1992). The burden is initially placed on the insured to show its loss falls within the scope of the losses insured under the policy. Id. at 731, 837 P.2d 1000. This includes establishing who is insured, the type of risk insured against, and the existence of an insurance contract. Farmers Ins. Co. of Wash. v. Frederickson, 81 Wash.App. 319, 322, 914 P.2d 138 (1996). Thus, establishing that a policy is in effect is not the same as establishing there is coverage. For example, even if an insured meets its burden to show its loss falls under the policy, the insurer may nevertheless avoid liability by showing the claimed loss is excluded by specific provisions of the policy. McDonald, 119 Wash.2d at 731, 837 P.2d 1000.
The record shows the trial court never addressed whether there was a complete absence of genuine issues of material fact regarding coverage so as to entitle Olivine to a judgment as a matter of law. See CR 56(c). Olivine twice moved the trial court for partial summary judgment. Although its first motion was entitled, "Motion for Summary Judgment as to Coverage," its content, together with the associated declaration from the chief executive officer (CEO) of Olivine, makes clear the court was asked to rule only on the issue of whether the policy was in effect on March 12, 1998. See CP at 312 (letter opinion); 415 (declaration by Olivine CEO). The court's letter opinion reaffirms this, as the court actually considered only whether Olivine was entitled to notice of the policy's cancellation and whether the policy remained in effect because Olivine did not receive such notice. But again, whether the policy is in effect is but one of the issues under the broader question of whether there is coverage for the particular claim. Frederickson, 81 Wash.App. at 322, 914 P.2d 138. Neither the trial court's first partial summary judgment decision on whether the policy remained in effect nor its second summary judgment order on damages, costs, and attorney fees resolved whether Olivine had shown, as a matter of law, there were no genuine issues of material fact on the issue of coverage. The matter is therefore remanded to determine whether Olivine's claim was covered under this policy and, if so, the proper damage award.

CONCLUSION
When an insurance policy is canceled at the request of a premium finance company, only those interests covered by the finance company's power of attorney will be considered canceled by the insured. The cancellation of interests to which the power of attorney does not relate will be considered cancellation by the insurer. Effective cancellation by an insurer is conditioned on compliance *503 with the notice requirements of RCW 48.18.290. An insurer must give notice of a policy's impending cancellation at the request of a premium finance company to those named insureds that have not authorized the finance company to cancel their interests. United Capitol's failure to comply with the notice requirements and notify Olivine of this policy's cancellation at the request of TEPCO left the policy in effect with respect to Olivine's interests when the Whatcom County Health Department's claim was made on March 12, 1998. Notwithstanding, the trial court erred when it granted Olivine summary judgment on coverage issues not necessarily foreclosed by its initial ruling that the United Capitol policy was not canceled with respect to Olivine's interests. We therefore remand for consideration of this issue as well as on the monetary award, if appropriate.
Affirmed in part, reversed in part and remanded.
ALEXANDER, CJ., SMITH, JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] Neither Clearwater nor TEPCO is a party to these proceedings.
[2] The court's letter opinion refers to RCW 48.18.250, but there can be no doubt the court meant RCW 48.18.290 since only the latter statute applies to this situation. See CP at 312.
[3] RCW 48.56.110 provides:

(1) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section.
(2) Not less than ten days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten day period.
(3) After expiration of such ten day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address.
(4) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.
[4] Our conclusion Olivine is an insured entitled to notice pursuant to RCW 48.56.110 is supported by the definition of insured under chapter 70.148 RCW. That chapter sets up a temporary program to encourage private insurance companies to provide pollution liability insurance to owners and operators of underground petroleum tanks. RCW 70.148.005. RCW 70.148.010(7) defines "insured" to include "the owner or operator who is provided insurance coverage."
[5] We note that, not only did TEPCO not have actual authority to cancel the United Capitol policy with respect to Olivine's interest since Olivine had not issued TEPCO a power of attorney, it also did not have apparent authority based on Clearwater's power of attorney. The existence of apparent authority depends on "objective manifestations made by the principal" to a third person. King v. Riveland, 125 Wash.2d 500, 507, 886 P.2d 160 (1994). Here, there are no such manifestations from Olivine to United Capitol regarding TEPCO's authority to act on Olivine's behalf, which precludes the existence of any apparent authority in this regard. See id.
[6] We reject United Capitol's argument it was not required to notify Olivine because TEPCO's notice of cancellation created a presumption that the cancellation was effective as to all named insureds, including Olivine. United Capitol relies on RCW 48.18.300, which applies to cancellations by the insured and provides:

The surrender of a policy to the insurer for any cause by any person named therein as having an interest insured thereunder shall create a presumption that such surrender is concurred in by all persons so named.
RCW 48.18.300(3). However, the record is devoid of any evidence TEPCO or Clearwater surrendered the policy to United Capitol. Nor can it be inferred the policy was surrendered because the policy could be canceled by either surrendering the policy or by mailing a written notice, and the record reveals TEPCO did in fact mail United Capitol a notice of cancellation. Therefore, it cannot be presumed Olivine concurred in the cancellation pursuant to RCW 48.56.110(3).
[7] RCW 48.56.110 was not independently authored by the Washington Legislature. Similar or identical versions have been adopted in at least 27 other states. Courts addressing those provisions have almost invariably done so in the context of a single insured. See, e.g., Leader Nat'l Ins. Co., 185 Ga.App. at 323-25, 363 S.E.2d 859 (applying provision corresponding to RCW 48.56.110(3) in the context of a single insured); Atwater, 566 A.2d at 470 (same); Ingram v. Nationwide Mut. Ins. Co., 5 N.C.App. 255, 168 S.E.2d 224, 226-27 (1969) (same); Hayes v. Hartford Accident & Indem. Co., 274 N.C. 73, 161 S.E.2d 552, 556-57, 559 (1968) (same); Tate v. Hamilton Ins. Co., 466 So.2d 1205, 1206 (Fla. App.1985) (same).
[8] RCW 48.56.110 is seemingly based on the presumption the premium finance company's authority to effectuate a policy cancellation is granted in the premium finance agreement. RCW 48.56.110(1) ("When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement...."). When, as here, there are multiple insureds but not all of the insureds have entered into a premium finance agreement, application of the remaining provisions of RCW 48.56.110 to those insureds not affected by an agreement with the premium finance company is tenuous at best.
[9] Olivine urges us to conclude the policy was canceled by United Capitol because TEPCO's power of attorney enabled it only to request cancellation of the policy. Under this reasoning, the policy could be considered canceled by United Capitol when it accepted TEPCO's request for cancellation. But whether TEPCO had the authority to cancel the policy or merely the authority to request its cancellation is not a relevant concern. The key concern is whether the insured challenging the policy's cancellation had granted the finance company the authority to cancel on its behalf. If that insured had not granted such authority and had not otherwise acquiesced in the policy's cancellation, the termination of coverage for that insured's interests is a cancellation by the insurer. Moreover, RCW 48.56.110 makes no distinction between a power of attorney enabling a premium finance company to cancel the policy and one merely enabling it to request cancellation. RCW 48.56.110(1) refers to "a power of attorney enabling the premium finance company to cancel any insurance contract," yet RCW 48.56.110(3) refers to a finance company's ability to exercise its power of attorney to "request in the name of the insured[] cancellation of [the] insurance contract." Compare RCW 48.56.110(1), with RCW 48.56.110(3).
[10] Section IV.9 of the United Capitol policy provides:

If we [United Capitol] decide to cancel or not to renew this policy, we will mail or deliver to the first Named Insured, shown in the Declarations written notice of cancellation or nonrenewal not less than 30 days or 10 days for nonpayment of premium, thereafter such cancellation shall be effective or before the expiration date.
CP at 72.
[11] The court also granted summary judgment in favor of Olivine on the issues of attorney fees and costs, but as noted above that issue it not properly before us. See supra at 154, 52 P.3d at 497.