## A05A1740. PHILLIPS v. THE STATE.
### (629 SE2d 130)

PHIPPS, Judge.

Tyrus Phillips was convicted of one count of aggravated assault by choking his girlfriend, Sheila Moore, and four counts of simple battery by hitting Moore's head, pushing her onto a coffee table, pulling her hair, and pushing her against a glass door on March 12, 2003. On appeal, Phillips contends that the trial court erred by compelling his wife to testify and by denying his claim of ineffective assistance of counsel. Because Phillips has demonstrated no reversible error, we affirm.

Shortly after Phillips met Moore in October 2002, he moved into her home, a second-floor apartment, where her minor niece and nephew also lived. Phillips soon became violent toward Moore. During one altercation around Thanksgiving 2002, Phillips showed her that he had a gun, threatened to kill her, and then hit and choked her, causing her to lose consciousness. Moore described Phillips during the following month as a "loose canon" and herself as his "punching bag." She repeatedly asked him to move out. He refused, sometimes drawing his gun or verbally threatening to kill her. Moore recalled that each time Phillips pulled out his gun, he would first put on gloves.

A few months later, Moore's nephew's teacher telephoned her about her nephew. Phillips became enraged, telling Moore that the teacher was calling to arrange a sexual tryst with her, so Moore ended her conversation with the teacher. The next day, March 12, Phillips called Moore repeatedly from work, accusing her of having affairs. Recalling Phillips's prior actions when angry, Moore decided to remove the gun from the apartment. After finding it stashed in a camera bag in the bedroom, she took the bag and its contents to her sister, who was working at the apartment leasing office.

Phillips came home, walked directly to the bedroom, discovered his gun missing, and demanded it from Moore. Moore went into the bedroom, told him to leave, and yelled for her niece and nephew to summon her sister from the leasing office. Phillips repeatedly struck Moore with his fist on her head and chest until she fell down. He then choked her until she passed out. Moore regained consciousness, and Phillips pulled her by her hair out of the bedroom, down the hallway, and into the living room, where he threw her onto a glass table. When

she struggled to her feet, Phillips pushed her into the patio sliding glass doors. Moore was screaming. Phillips pushed her to the floor and began kicking her, punching her face with his fists, and choking her until she again passed out. Moore remembered next regaining consciousness at the leasing office.

Moore's neighbor, who lived in the apartment below hers, testified that when he came home on March 12, 2003, he heard a woman screaming, glass breaking, and other loud noises coming from Moore's apartment. He immediately walked back outside and saw Phillips push Moore into the patio sliding glass doors. Phillips's hands were around Moore's neck. Moore's neighbor went to the leasing office and told Moore's sister to call 911, which she did.

Meanwhile, the apartment complex maintenance supervisor observed Moore stagger from her apartment. Moore appeared to be passing out, so he carried her into the leasing office. He testified that Moore had bruises on her eye and was overall "kind of beat up."

The law enforcement officer who responded to the call described Moore's condition as dazed. He testified that Moore's shirt was bloody, and loose strands of hair were on the back of the shirt. Moore's sister gave the officer the camera bag and its contents.

Moore was taken by ambulance to a hospital. Her treating physician observed that Moore had several abrasions and contusions about her head, neck, back, arms, and legs. The physician opined that Moore's injuries were consistent with ones suffered by a person who had been beaten about the body, choked, and thrown about.

Moore's nephew, a fifth grader at the time of the incident, remembered the day he and his sister ran to the leasing office to get help for his aunt. He testified that Phillips and Moore had been arguing and that when Moore later arrived at the leasing office, she was bruised and "could barely walk." Moore's nephew recalled another disturbing encounter between Phillips and Moore. Late one night, he had awakened and seen Phillips and Moore seated in another room. Phillips was holding a gun. Moore's nephew testified that he heard Phillips threaten to kill someone.

Pictures of Moore's bruised forehead and arm, her swollen face, and bald spots on her scalp were shown to the jury. Moore testified that her condition had resulted from Phillips beating her on March 12, 2003. The jury was also shown pictures of the interior of the apartment that depicted a broken glass table and rooms in general disorder. Moore testified that the broken glass table and the disarray had been caused by Phillips "throwing me around everywhere" that day. In addition, the jury was shown the camera bag and its contents, including the gun with which Phillips had threatened Moore many times and the gloves he had worn during each such assault.

The state also presented similar transaction evidence through Phillips's wife, to whom he had been married since 1995. She testified, reluctantly, that in February 2000, she sought a temporary protective order against Phillips because he had grabbed her neck and become "a little rough" with her.

1. Phillips contends that the trial court compelled his wife to testify despite the fact that she asserted the spousal privilege. He also points out that, during a hearing held out of the jury's presence to determine whether his wife was invoking that privilege, the court remarked, "I think probably as a matter of law she's already testified once about this similar transaction. She probably can be forced to testify. I'd rather not . . . do that."

The court's belief was erroneous. "[A spouse's] privilege not to testify may be invoked by the witness spouse even if he or she has testified for or against the defendant spouse in a previous hearing."[1] The transcript of the hearing reveals that the court told Phillips's wife that she could not be compelled to testify, while it persisted that it was important for the jury to hear what Phillips had done to her. Phillips's wife insisted that she did not believe she should testify. But after a lengthy colloquy with the court, she finally said, "Okay."

Phillips claims that the court erred by compelling his wife to testify. He argues that such error is reversible, asserting that the similar transaction evidence was vital and that Moore had been impeached on several matters during cross-examination. Even assuming that the trial court erred by compelling Phillips's wife to testify, we find no merit in Phillips's argument that such error is reversible. Where, as here, the error does not implicate any issue of constitutional dimension,[2] the "highly probable test" must be employed.[3] Under that test, reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.[4] The state presented Moore's testimony of Phillips's acts underlying the instant crimes, her neighbor's eyewitness testimony describing parts of the altercation, the testimony of numerous other corroborating witnesses, and evidence of prior difficulties between Phillips and Moore showing Phillips's motive, intent, and bent of mind in committing the instant crimes. When the testimony of

---

[1] *Brown v. State*, 261 Ga. 66, 70 (5) (c) (401 SE2d 492) (1991); OCGA § 24-9-23 (a) (spouses shall not be compellable to give evidence in any criminal proceeding for or against each other).

[2] The purpose of the spousal privilege codified in OCGA § 24-9-23 is to protect marital relationships. *State v. Peters*, 213 Ga. App. 352, 356-357 (444 SE2d 609) (1994).

[3] *London v. State*, 274 Ga. 91, 94-95 (4) (c) (549 SE2d 394) (2001); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

[4] *London*, supra; *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996).

Phillips's wife is reviewed in light of the strength of the balance of the state's unrebutted evidence, we find that there is no reasonable possibility that the jury would have returned a different verdict had the trial court not compelled Phillips's wife to give similar transaction evidence.[5]

2. Phillips contends that he received ineffective assistance of counsel. He argues that the trial judge assumed a prosecutorial role by compelling his wife to testify and by intimidating him. Phillips claims that his lawyer's failure to move for a mistrial and recusal of the trial judge constituted ineffective assistance. We find, however, that within the context of this contention, no reversible error has been shown.

To prevail on this contention, Phillips must establish, pursuant to *Strickland v. Washington*,[6] that his trial counsel's performance was deficient and that a reasonable probability exists that, but for the deficient performance, the trial would have had a different outcome.

> Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[7]

We need not address both components of the *Strickland* test if the showing on one is insufficient; nor must we address the components in any particular order.[8]

(a) We find no merit in Phillips's contention regarding his wife's testimony. Based on our conclusion in Division 1 that there is no reasonable probability that the jury would have returned a different verdict had Phillips's wife not testified, Phillips cannot show that but for his lawyer's performance, his trial would have had a different outcome.

(b) We find no merit in Phillips's claim regarding the trial judge's intimidation of him. As to this claim, Phillips cites a statement by the judge to him outside the jury's presence, "I told you before, Mr. Phillips, what you are doing by your conduct is you are showing the jury exactly the kind of conduct you're accused of."

At a pretrial hearing, defense counsel informed the court that Phillips was seeking to be designated as co-counsel. The court denied

---

[5] See *London*, supra; *Felder*, supra; *Johnson*, supra.

[6] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[7] *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004) (citations omitted).

[8] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

the request, reminding Phillips that he was represented and explaining to him that he could communicate with his lawyer throughout the trial. Later, during the state's examination of Moore's nephew, Phillips interrupted, "Objection. She's leading the witness." The court again reminded Phillips that he was represented by counsel and further explained to him that a child witness may be asked leading questions on direct examination.[9]

The next day of trial, the state announced that it would next call Phillips's wife. As soon as the jury was brought in, an unreported discussion ensued, and the jury was sent out of the courtroom. The deputy reported to the court, "Mr. Phillips is making the assumption that he's not going to let his wife testify no matter what." The court explained to Phillips that the spousal privilege belonged to the witness spouse, while Phillips persisted that his wife could not be forced to testify. The court warned Phillips that if he again disrupted the trial proceedings "like you have twice already, I'm going to have you arrested and put in custody and in chains and gagged." The exchange continued:

> THE COURT: Because you keep blurting out things and because you're trying to intimidate first your wife in this case just a few minutes ago and you've done the same thing with the sheriffs. You've done the same thing twice during these proceedings. And I'm going to tell you that. I'm not going to put up with it, okay? Do we understand that?
> THE DEFENDANT: Yes, Sir, Your Honor.
> . . .
> THE COURT: You need to calm down. It's really important that you stay calm.
> THE DEFENDANT: I apologize, Your Honor.
> THE COURT: I told you before, Mr. Phillips, what you are doing by your conduct is you are showing the jury exactly the kind of conduct you're accused of. Do you understand that? Do you understand that?

The trial judge has broad discretion in prescribing the manner in which the business of the court will be conducted and in regulating the conduct of the parties, counsel, and witnesses.[10] In this instance, the trial judge's exercise of this discretion was without abuse. "[A] layperson does not have the right to represent himself and also be

---

[9] See OCGA § 24-9-63; *Tanner v. State*, 228 Ga. 829, 830 (2) (188 SE2d 512) (1972) (whether counsel will be permitted to propound leading questions to a child witness is within the sound discretion of the trial court).

[10] See OCGA § 15-1-3; *Butler v. State*, 172 Ga. App. 405, 406 (1) (323 SE2d 628) (1984).

represented by an attorney."[11] Accordingly, Phillips had no right to personally make evidentiary objections or otherwise assume the role of co-counsel. And placed within context, the trial judge's advice to him that his impulsive outbursts before the jury could negatively impact his defense cannot fairly be labeled intimidation. Because the cited statement provided no basis for the grant of a motion for recusal or for mistrial, Phillips's lawyer's performance was not deficient for failing to pursue meritless motions.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 24, 2006.

*Mark R. Gaffney*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

[11] *Seagraves v. State*, 259 Ga. 36, 39 (376 SE2d 670) (1989) (citations omitted).