A07A0774. PEELER v. THE STATE.
(649 SE2d 775)

BARNES, Chief Judge.

Following the denial of his new trial motion, Havesta Peeler appeals his convictions for two counts of armed robbery and two counts of possession of a firearm by a convicted felon. He contends that trial counsel was ineffective for failing to request funds to hire an

identification expert, requesting a charge on eyewitness identification that included an instruction to consider a witness's level of certainty, and failing to file a motion to suppress the warrantless search of Peeler's driveway. He also maintains that the evidence was insufficient to support his convictions. We do not agree, and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006).

So viewed, the evidence demonstrates that at approximately 11:30 p.m., a cab driver picked up three males from an address he received from his dispatcher. Two of the men sat in the back, and the other sat in the front next to the driver. As they approached their stop, one of the men in the back asked the driver if he had change for a twenty, and when the driver replied yes, the man "stuck a gun in [his] neck and said, can you change this, give me your money." The men took the driver's money, jumped out of the cab and ran away. The driver testified that he did not see the faces of the two men in the back seat, but he saw the face of the front seat passenger, and identified him as Peeler.

Four days later, another cab driver picked up three men at around 11:00 p.m. Once again, two of the men got into the back of the cab, and the third rode up front with the driver. The driver identified Peeler as the man who rode in the front passenger seat. As the cab approached the men's stop, one of the passengers in the back grabbed the driver's head, put a gun to the back of her neck, and told her to park the car or "he was going to blow [her] brains out." The man identified as Peeler told the driver to turn on the dome light and demanded her money. After he rifled through her purse, Peeler told her there was not enough money, and then sprayed the driver's face with what she believed to be WD-40. Peeler and one of the other men then ran away, while the third robber stayed behind, held the driver at gunpoint and asked her to perform fellatio on him. The two fought and the man eventually ran away. The second robbery occurred at the same location as the earlier robbery.

A short time later, the driver pulled into a Chevron and noticed a man walking into the gas station. She recognized the man as Peeler, the man who sat in the front seat with her during the robbery. The

driver testified that they made eye contact and after Peeler looked at her car he never went into the store, "he just turned and ran back to the green vehicle." The victim was able to get the license plate number of the green car and reported it to her dispatcher. The first victim heard the car's description and license plate number over the radio, and started looking for the car. He located the car at a house near the location of the robberies, and called dispatch to notify police.

When police arrived at the address, the vehicle was parked in the driveway. The description and license plate number corresponded with the information provided by the driver. The investigating officer touched the hood of the car as he approached the house and noticed that it was warm, which indicated to him "that the vehicle had been operated within the last hour or so." Peeler answered the front door and became belligerent when he was questioned about the car. The officer told him that the car might have been involved in a robbery and that they were just investigating. Peeler responded that he "didn't have anything to do with any taxicab robbing, no taxicab driver or anything like that." Police had not provided any details about the crime. Peeler was placed into custody, and the second victim apparently came to the scene on her own accord. The investigating officer testified that they did not ask the victim to come to the scene, but she wanted to talk with police. She saw Peeler in the patrol car and identified him as the man who had sprayed her. The first victim did not see Peeler that night; he later identified Peeler from a photographic lineup.

1. Contrary to Peeler's assertions otherwise, the evidence was sufficient to find him guilty of two counts of armed robbery and two counts of possession of a firearm by a convicted felon. He does not challenge the showup or the photographic lineup, but contends that the legal sufficiency of the identification was inadequate because there was no other evidence linking him to the crimes.

However, in light of the victims' opportunity to observe Peeler during the crimes, their accurate description to the police, their unhesitating identification of Peeler during the showup and photographic lineup, the proximity of his home to the crime scene, the location of the green vehicle in his driveway, and his statements to police, we cannot conclude that a substantial likelihood of misidentification occurred. Considering all of the evidence, a finding that Peeler was a perpetrator was authorized.

2. Peeler next contends that trial counsel was ineffective for (1) failing to hire an expert as to identification; (2) requesting a charge on eyewitness identification that included an instruction to consider the witness's level of certainty; and (3) failing to file a motion to suppress the warrantless search of Peeler's driveway.

To prevail on a claim of ineffective assistance of counsel, defendant must show that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous.

*Melson v. State*, 263 Ga. App. 647, 648-649 (3) (588 SE2d 822) (2003).

(a) Peeler first contends that trial counsel was ineffective for failing to seek funds to retain an expert for the purpose of providing expert testimony on the reliability of eyewitness identifications. Trial counsel testified at the motion for new trial hearing that he was very familiar with the use of experts in this area, and that he did not believe hiring an expert on the issue of identification was important. He testified that based on his experience it would not have helped Peeler's case. This tactical decision did not equate with ineffective assistance of counsel. *Williams v. State*, 259 Ga. App. 742, 747 (7) (a) (578 SE2d 128) (2003). This is especially true since the admission of this evidence lies within the sound discretion of the trial court, and there is nothing to guarantee that such evidence, even if available, would have been allowed. See also *Darnell v. State*, 257 Ga. App. 555, 559 (7) (b) (571 SE2d 547) (2002).

Moreover, the trial court found, and we agree, that trial counsel did not act unreasonably in light of his familiarity with the case and experience, and that the outcome of the case would not have been different had this evidence been available. "To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case." (Citation and punctuation omitted.) *Cupe v. State*, 253 Ga. App. 851, 856 (3) (e) (560 SE2d 700) (2002).

(b) Peeler next contends that trial counsel was ineffective for requesting a jury charge on eyewitness identification which included the language that the jury should consider the witness's level of certainty.

Per Peeler's request, the trial court instructed the jury that identity was a question of fact for the jury's determination, and that when "assessing reliability of identification," the jury could consider, among other things, "the level of certainty shown by the witness about his or her identification." After the trial in this case, which was held in 2000, our Supreme Court declared in *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005), that it could "no longer endorse" the

pattern jury instruction on the witness's "level of certainty," and "advise[d] trial courts to refrain from informing jurors they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of that identification." The *Brodes* opinion also evaluated whether giving the instruction in that case over objection could be considered harmless error, and concluded it was not.

Pretermitting whether counsel erred in requesting the instruction, Peeler has failed to show that he was prejudiced as a result, and reversal under *Brodes* is not required. Here, unlike in *Brodes*, there was evidence in addition to the eyewitnesses' identification which linked Peeler to the incident. The car he was seen in was identified by one of the cab drivers, and Peeler also made inculpatory statements to police about the robberies. Under these circumstances, the "level of certainty" portion of the identity charge was harmless "because it is highly probable that the error did not contribute to the judgment." (Citations and punctuation omitted.) *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005). Thus, as Peeler has failed to show that he was prejudiced by the charge, his ineffective assistance claim on this basis must fail.

(c) Peeler last contends that trial counsel was ineffective for failing to file a motion to suppress the warrantless search of his driveway. Because the failure to file a motion to suppress does not constitute per se ineffective assistance of counsel, Peeler must make a "strong showing" that the evidence would have been suppressed had a motion been filed. *Millsap v. State*, 275 Ga. App. 732, 736 (3) (c) (621 SE2d 837) (2005).

Trial counsel testified that he was aware that the cab driver, not police, initially went into Peeler's driveway to verify the car and the tag number, and not as an agent of police. He further testified that the car could be seen from the street, and that police had not seized any items from the car. Trial counsel also testified that he did not think the circumstances warranted a motion to suppress.

Moreover,

[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. Consequently, a police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point. This doctrine is applicable equally to homes and automobiles. Thus . . . [u]nder the "plain view" doctrine, a law enforcement officer

has a right to visually search the entirety of a car from his vantage point on a street or roadside.

(Citations and punctuation omitted.) *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986). Thus the officer's observations made while in the driveway did not violate Peeler's Fourth Amendment rights since the officer had taken "the same route as would any guest, deliveryman, postal employee, or other caller." Id. Accordingly, Peeler's trial counsel committed no error in failing to file a motion to suppress the search of the driveway as there is no deficiency for failing to pursue meritless motions. *Phillips v. State*, 278 Ga. App. 439, 444 (2) (b) (629 SE2d 130) (2006).

 *Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 6, 2007.

 *James D. Lamb*, for appellant.
 *J. Gray Conger, District Attorney, Lew S. Barrow, Assistant District Attorney*, for appellee.