## S08A0018. SMITH v. THE STATE.
### (663 SE2d 142)

BENHAM, Justice.

On June 6, 1997, Frederick Keith Hope was fatally shot while driving a car near the Atlanta hotel where he was a registered guest. Appellant Courtney Smith was convicted of malice murder in connection with the death of Hope and appeals the judgment of conviction entered against him.[1]

The chief medical examiner for the Georgia Bureau of Investigation (GBI) testified the victim died from massive internal bleeding

---

[*] We do not find the Court of Appeals' failure to follow the statutory mandate of OCGA § 9-11-12 (b) to be harmless error as Avion Systems urges.

[1] The victim was shot in the early morning hours of June 6, 1997. Appellant was arrested for the crime on January 23, 1998, and indicted on June 8, 1999. His first trial in March 2004 ended in a mistrial because the jury was deadlocked. The second trial commenced on November 1, 2004, and concluded with the jury's return of its verdicts on November 5.

caused by a gunshot that entered and exited his right arm and then entered his chest and damaged his aorta. The vehicle the victim was driving when he suffered the fatal wound side-swiped a parked vehicle occupied by a police officer for the Metropolitan Atlanta Rapid Transit Authority (MARTA), who identified appellant as one of two men who exited the victim's vehicle and ran toward a nearby hotel. The MARTA officer described appellant as wearing a blue hooded sweatshirt and blue jeans. While police were gathered in the parking lot of the hotel at which the victim was a registered guest and to which the two occupants of the victim's vehicle had run, they noticed a room whose occupants repeatedly opened the curtain to peer out at the activity and closed the curtain when they noticed a police officer looking at them. When the occupants opened the room door in response to a police officer's knock, the police officer observed in plain view a blue hooded sweatshirt and a washcloth with blood on it. The two male occupants of the room, neither of whom was the registered hotel guest assigned to that room, consented to the officer's request for permission to take the sweatshirt and washcloth and agreed to accompany police to a police station for further questioning. After the occupants left with police, hotel personnel de-activated the room's key-card entry system to prevent anyone other than management from entering the room.

When the hotel's general manager inspected the room the following day to ensure its safety before admitting housekeeping personnel and renting it to a new guest, he found a bloodstained sock behind the headboard of one of the beds; a gun clip behind a mirror; and a handgun in the air-conditioning vent. GBI forensic biologists testified that the DNA profiles of both the victim and appellant were found on the sock, and a GBI fingerprint examiner testified that a fingerprint removed from the room's air-conditioning vent cover was that of appellant. The GBI's firearms examiner testified that the bullet removed from the victim during the autopsy was fired from the Lorcin .380-caliber pistol found in the air-conditioning vent of the hotel room in which appellant was found. The man in the hotel room with appellant testified that appellant removed the vent cover and placed the pistol in the ductwork.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

Appellant's sentence of life imprisonment was filed on November 16, 2004. Appellant filed a motion for new trial on November 9 and amended it on June 16, 2006, and January 12, 2007. The amended motion was the subject of hearings held on June 26, 2006, and January 25, 2007, and the motion was denied on February 13, 2007. A timely notice of appeal was filed March 5, 2007, and the appeal was docketed in this Court on September 6, 2007. It was submitted for decision on the briefs.

2. Appellant asserts his conviction should be reversed because his constitutional right to a speedy trial was denied. A speedy trial is guaranteed a criminal defendant by the Sixth Amendment to the United States Constitution and by Article I, Section I, Paragraph XI (a) of the Georgia Constitution. The constitutional right to speedy trial attaches at the time of arrest or when formal charges are brought, whichever is earlier. *Boseman v. State*, 263 Ga. 730 (1) (438 SE2d 626) (1994). To determine whether an accused's constitutional right to a speedy trial has been violated, a court engages in a balancing process in which it assesses the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant, if the defendant has shown that the delay between arrest or formal accusation and trial is "presumptively prejudicial." *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972); *Wimberly v. State*, 279 Ga. 65 (608 SE2d 625) (2005). The appellate court determines whether the trial court abused its discretion in balancing the *Barker* factors. *Torres v. State*, 270 Ga. 79 (2) (508 SE2d 171) (1998).

Appellant was arrested on an outstanding warrant charging him with murder in January 1998, and charged in a true bill of indictment returned on June 8, 1999, with malice murder, felony murder, and aggravated assault with a deadly weapon in connection with the homicide of the victim. Appellant's trial took place in November 2004. The delay that constitutes presumptive prejudice depends upon the peculiar circumstances of each case (*Barker v. Wingo*, supra, 407 U. S. at 530) and there has been no enunciation of peculiar circumstances in this case. Because we are unable to say that the government "prosecuted [appellant's] case with customary promptness," (*Wimberly v. State*, supra, 279 Ga. at 66), we deem the delay in this case as presumptively prejudicial and examine the *Barker* factors.

Part of the delay in trying appellant was attributable to the fact that he was mistakenly released from jail shortly after his arrest in 1998 and was not re-arrested until January 2002. It appears that defense counsel shares responsibility for the delay in trying this case, as trial counsel was given a continuance when she became counsel of record at some point between February and August 2003, the case appeared on trial calendars in May and August 2003 but was not tried, and trial counsel engaged in extensive discovery which resulted in informal continuances and filed several pre-trial motions that required hearings prior to the case being tried in March 2004 (trial ended in a mistrial due to a deadlocked jury). See *Nelloms v. State*, 274 Ga. 179, 180 (549 SE2d 381) (2001).

Appellant did not make a statutory demand for trial under OCGA § 17-7-171, and did not assert his constitutional right to a

speedy trial until he filed his motion to dismiss the indictment the day before the commencement of his March 2004 trial. His failure to assert his right to a speedy trial is entitled to strong evidentiary weight against him. *Nelloms v. State*, supra, 274 Ga. at 181.

The final factor is the prejudice suffered by the defendant resulting from the delay in bringing him to trial. We focus on the three interests the right to speedy trial was designed to protect: the prevention of oppressive pre-trial incarceration; the minimization of the defendant's anxiety and concern; and, most importantly, the limitation of the possibility the defense will be impaired. *Nelloms v. State*, supra, 274 Ga. at 181. There was no oppressive pre-trial incarceration since appellant was incarcerated on these charges for only four or five months over the entire period (from the time of his second arrest in January 2002 until he was released on bond in May 2002). Appellant made no showing of specific anxiety or concern he suffered while awaiting trial. Id. In his pre-trial motion to dismiss, appellant claimed his defense was impaired by the trial delay, citing "fading memories." However, a generalized statement that the memories of witnesses have faded over the passage of time is not sufficient. For memory lapse to be prejudicial, appellant must establish that the lapses substantially relate to a material issue. See *Barker v. Wingo*, supra, 407 U. S. at 534 (memory lapses cited "were in no way significant to the outcome"); *Threatt v. State*, 282 Ga. App. 884, 890 (640 SE2d 316) (2006). At the hearing on his motion for new trial, appellant presented testimony on another impairment of his defense purportedly caused by the trial delay — the 1999 death of a hotel security guard who had identified someone else as one of the two men running toward the hotel. The death of the security guard was not sufficiently prejudicial to appellant since his identification of another man as one of the two men who ran from the scene of the murder did not preclude the possibility that appellant was one of the two men running from the scene. Furthermore, defense counsel apparently saw the security guard's report as harmful to the defense inasmuch as she successfully barred any hearsay testimony regarding the observations of the deceased security guard.

After examining the *Barker v. Wingo* factors in conjunction with the facts of this case, we conclude the trial court did not abuse its discretion when it denied appellant's motion to dismiss the indictment because appellant had not been afforded a constitutionally guaranteed speedy trial.

3. Appellant contends the trial court erred when it denied his motion to suppress the evidence found in the hotel room. The trial court denied the motion as to the gun, the blood-stained sock, and the gun clip after finding appellant did not have standing to invoke the protection against unreasonable search and seizure afforded by

the Fourth Amendment since he was not the room's registered guest and had shown no connection to the room other than his presence. The trial court denied the motion to suppress the blue hooded sweatshirt and the bloody washcloth because those items were in plain view and, even if improperly taken, were admissible under the "inevitable discovery" rule.[2]

"In order to claim the protection of the Fourth Amendment [against unreasonable search and seizure], a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. . . ." *Minnesota v. Carter*, 525 U. S. 83, 88 (119 SC 469, 142 LE2d 373) (1998); *Floyd v. State*, 237 Ga. App. 586, 587 (516 SE2d 96) (1999). A person has a legitimate expectation of privacy in his or her home and may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, "one who is merely present with the consent of the householder may not [claim the protection of the Fourth Amendment]." *Minnesota v. Carter*, supra, 525 U. S. at 89-90.

Like a householder, the registered guest of a hotel room has an expectation of privacy in that room. *Stoner v. California*, 376 U. S. 483, 490 (84 SC 889, 11 LE2d 856) (1964). "Whether this same protection applies to a guest of the renter, however, is determined based on the status of the guest. If the guest is only a casual visitor, as opposed to an overnight guest, [the guest] does not have the same expectation of privacy as the renter." *United States v. Dyer*, 2007 WL 2850491 (E.D. Tenn. 2007). See also *United States v. Inmon*, 2008 WL 2018286 (W.D. Mo. 2008). Appellant did not establish that he was sharing the room with the registered guest or that he was an overnight guest of the registered guest, there was no evidence appellant had a key to the room, and there was no evidence of any luggage belonging to appellant in the room. *United States v. Grandstaff*, 813 F2d 1353, 1357 (9th Cir. 1987) (mere presence in a hotel room rented by another is not enough to establish a legitimate expectation of privacy). Because appellant did not demonstrate he had a reasonable expectation of privacy in the hotel room, he was not authorized to claim the protections of the Fourth Amendment, and the trial court did not err in denying his motion to suppress the evidence taken from the hotel room. *Floyd v. State*, supra, 237 Ga. App. at 588.[3]

---

[2] Assuming arguendo that the hooded sweatshirt and washcloth are not subject to the "standing" ruling, the denial of the motion to suppress these items was not error in light of the testimony that the items were observed in plain view by an officer who was entitled to be where he was at the time of observation, and the items were removed from the room with the consent of appellant and his companion.

[3] In his revised motion to suppress filed shortly before the commencement of appellant's second trial, appellant sought to establish a reasonable expectation of privacy in the hotel room

4. Appellant maintains the trial court committed reversible error when it denied his motion to replace a juror who repeatedly appeared to be dozing. On the morning of the second day of trial, defense counsel reported to the trial court her observation of a juror sleeping the day before during the State's opening statement. The trial court asked counsel to advise the court if it should happen again and, during a mid-afternoon break in the proceedings, defense counsel reported her observation of the juror sleeping. The prosecutor stated his observation that the juror's eyes appeared closed because she was looking down while she wrote notes on a pad. The trial court stated it had seen the juror with eyes closed, but the juror's eyes had opened while the court was watching. The trial court addressed the jury and asked them to refrain from sleeping during the trial and to awaken any of their neighboring jurors who dozed off. The following afternoon, after defense counsel advised the trial court that the same juror appeared to be sleeping, the trial court talked with the juror about the need to stay awake. The juror apologized, explaining the room was hot and she was on medication. The trial court suggested the juror change seats and stand when she became drowsy, and directed the courtroom deputy sheriff to nudge the juror's shoulder should the deputy see her doze off. The trial court denied defense counsel's motion to excuse the juror, to identify the medication the juror was taking, and to ask the juror to evaluate her ability to concentrate on the evidence.

A trial court is statutorily vested with the discretion to discharge a juror and seat an alternate juror at any time during the proceedings, as long as the trial court has a sound legal basis to do so. OCGA § 15-12-172; *Brooks v. State*, 281 Ga. 14 (3) (635 SE2d 723) (2006). When faced with a juror sleeping during the trial, counsel has a duty to bring the matter to the attention of the trial court and the trial court has a duty to awaken the juror. *Foster v. State*, 255 Ga. 425 (2) (339 SE2d 256) (1986). The trial court acted promptly when the matter was brought to its attention, even though it was disputed whether the juror in question was asleep, by asking the jury to stay awake and keep their fellow jurors awake. When it appeared the juror had dozed off, the trial court addressed that juror individually and initiated changes to accommodate the juror's efforts to stay alert. As there is no indication that the single confirmed act of dozing was anything other than momentary, the trial court did not abuse its

by showing he intended to spend the night in the hotel room. He relied on the statement of the other occupant of the hotel room that they and the men who rented the hotel room planned to "get a room and pick up some girls." Appellant's planned activity does not trump the fact that he did not demonstrate that he spent the night in the hotel room as a guest of the registered guest. See *United States v. Cody*, 434 FSupp.2d 157, 164-167 (S.D. N.Y. 2006).

discretion in concluding that its remedial actions were sufficient and in denying appellant's motion to remove the juror. See *Williams v. State*, 190 Ga. App. 361 (2) (378 SE2d 886) (1989).

5. The police officer whose parked patrol car was struck by the vehicle in which the victim was found testified that two men ran from that vehicle and came within several feet of the witness. The officer testified he got "a real good look" at the man in a hooded sweatshirt and blue jeans who exited from the passenger side of the victim's vehicle. The witness acknowledged he had described himself at a 1998 probable cause hearing as 85% sure appellant was the man the witness saw running away, and testified at trial he was not 100% sure appellant was the man he saw running from the victim's vehicle.

The trial court gave a jury instruction that included an eyewitness's level of certainty as one of the elements the jury could consider in assessing the reliability of the eyewitness's identification testimony. In *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005), decided seven months after appellant was convicted, this Court withdrew its endorsement of "level of certainty" as a factor to be considered in assessing reliability and advised trial courts to refrain from informing jurors that they could consider a witness's level of certainty in deciding the reliability of that eyewitness's identification testimony. While including the "level of certainty" language in the charge was error, it was harmless error in light of the other significant evidence corroborating the eyewitness identification and linking appellant to the crime. See *Jones v. State*, 273 Ga. 213 (3) (b) (539 SE2d 143) (2000); *Peeler v. State*, 286 Ga. App. 400 (2) (b) (649 SE2d 775) (2007). The inclusion of the "level of certainty" language in the jury instruction on eyewitness identification did not constitute reversible error.

6. Lastly, appellant contends the trial court erred when it denied appellant's request for a mistrial after a witness for the prosecution, when asked on cross-examination if she recalled "testifying at a pretrial hearing about this matter back in March," replied, "Oh, yes, I remember the trial, yes." Appellant's first trial on these charges had ended in March with the declaration of a mistrial after the jury had been unable to reach a unanimous verdict. Prior to the presentation of any evidence in the re-trial in November, the prosecutor and defense counsel told the trial court that, to avoid making the jury aware that appellant had been tried on these charges previously and had not been acquitted, they had agreed to inform their witnesses to refer to testimony at the previous trial as testimony given at a previous hearing.

Whether to grant or deny a motion for mistrial is necessarily a matter largely within the discretion of the trial court (*Stanley v.*

*State*, 250 Ga. 3 (2) (295 SE2d 315) (1982)), and the trial court's denial of a motion for mistrial should not be disturbed by the appellate courts unless a mistrial is essential to the preservation of the right to a fair trial. *Hamilton v. State*, 274 Ga. 582 (7) (555 SE2d 701) (2001). We, as did the trial court, appreciate the effort counsel expended to keep the jury unaware that appellant had been tried previously for these offenses. However, we cannot say that a single, one-worded reference to a previous trial, which reference occurred as a result of confusion as to which pre-trial hearing defense counsel was referring, made a mistrial essential to the preservation of appellant's right to a fair trial. Accordingly, the trial court did not abuse its discretion when it denied the mistrial motion.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 2008.

*Stephen T. Smith*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General,* for appellee.