**FIRST DIVISION
BARNES, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 27, 2020**

# In the Court of Appeals of Georgia

A20A0281. MORGAN v. THE STATE.

PHIPPS, Senior Appellate Judge.

On appeal from her conviction for aggravated assault, Priscilla Morgan argues that the trial court erred when it it admitted evidence of her prior bad acts and when it overruled her husband's assertion of the spousal witness privilege. Morgan also argues that trial counsel was ineffective. We find no reversible error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the jury's verdict, the record shows that in May 2014, Morgan was living with her boyfriend and her three daughters when the family attended an evening party at a nearby house. While the daughters stayed in a back room, a female guest fed Morgan a hot dog in a suggestive manner that angered the boyfriend. After the boyfriend put the guest in a chokehold, he drove Morgan's daughters home and returned to the party. When the couple later left the party, they argued, and the boyfriend struck Morgan in the mouth, causing it to swell.

Morgan called her brother, told him that the boyfriend had hit her, and asked the brother to come over "before [she] handle[d] it [her]self." Morgan then sent her daughters back to the party, where other guests observed the girls looking "scared." Morgan remained at her house. The brother and a cousin arrived shortly afterward and saw the boyfriend lying on the floor, with Morgan, who was distraught, cradling him and asking him to "get up." Two "big" knives lay on the kitchen floor "a foot or so" away from the boyfriend, and Morgan showed the men a stab wound, but there was no blood on either the knives or the floor. The cousin inferred at the scene that Morgan had stabbed the boyfriend in retaliation for his hitting her, and also testified

2

that "this wasn't the first time" that Morgan had asked him for assistance with a domestic dispute.

After the cousin called 911, the brother left in the cousin's car; the cousin, who had moved the knives to the sink, then walked out and away from the house. When police arrived, Morgan was the only person besides the victim in the house. Police found the victim unresponsive on the floor of the kitchen with a stab wound and two bite marks, one fresh, on his chest. No knives were found on the floor or the sink, and the floor was wet. The victim later died at a hospital.

Morgan was arrested and charged with malice murder, felony murder, family-violence aggravated assault, and possession of a knife in the commission of a felony. Before trial, the State proffered evidence of two prior bad acts in the form of testimony from witnesses including Morgan's husband, Antonio. The trial court held that evidence of these prior acts was admissible to show motive, intent, identity, preparation, and absence of mistake and that, given the "striking similarity" between the charged and extrinsic acts, including the "intimate" relationships and violence involved, the probative value of the prior acts outweighed any unduly prejudicial effect.

At trial, Antonio invoked the spousal witness privilege codified at OCGA § 24-5-503, and trial counsel objected to the introduction of his testimony concerning Morgan's prior bad acts on this basis, but trial counsel affirmatively withdrew the objection later on the ground that both prior acts had occurred before the couple's 2006 marriage. According to the testimony of a cousin and Antonio, as well as a police report read at trial, in August 2002, Morgan ambushed her then-boyfriend[1] with the assistance of men (including Antonio), suspended him upside down on a retaining wall, and beat him with a tire iron before stripping him of his pants, which contained $250. The victim of this August 2002 attack suffered lacerations to his head, face, and body, with bruises on his ribs and arms.

Antonio and a police officer also testified that in December 2003, Morgan threw a vase at Antonio, causing a cut and bleeding on his hand, and then stole his pants, including the $250 inside them. The officer called to the scene observed a bite mark on Antonio's shoulder as well as bruises and blood on his torso and legs. Morgan was convicted of family violence battery arising from this December 2003 incident.

---

[1] This man appeared at trial but refused to testify in any detail as to the August 2002 incident.

Morgan did not present any witnesses at trial. At closing argument, Morgan's principal argument, based on her videotaped statement to a detective (which had been played to the jury), was that she was defending herself from her jealous and irate boyfriend when she stabbed him and that she did not intend to kill him.

A jury acquitted Morgan of both counts of murder and the single count of knife possession, but found her guilty of family-violence aggravated assault. She was convicted and sentenced to 20 years with 15 to serve. Her motion for new trial was denied.

1. Although Morgan has not argued insufficiency on appeal, we have reviewed the record and conclude that the evidence, construed in support of the verdict, was sufficient to sustain her conviction for aggravated assault. See OCGA § 16-5-21 (a) (2) (defining aggravated assault as assault with a deadly weapon); *Cockrell v. State*, 281 Ga. 536, 536-537 (1) (640 SE2d 262) (2007) (evidence was sufficient to support conviction for aggravated assault when defendant stabbed unarmed victim during a physical altercation); *Jackson*, supra.

2. On appeal, Morgan first argues that the trial court erred when it authorized the admission of testimony concerning her 2002 and 2003 prior acts. We disagree.

OCGA § 24-4-404 (b) ("Rule 404 (b)") provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The Supreme Court of Georgia has adopted a three-part test by which we evaluate the admissibility of so-called "other acts" evidence: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." (Citations and punctuation omitted.) *Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016). See also OCGA § 24-4-403 ("Rule 403") ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"); *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015).

As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA

6

§ 24-4-401; accord *Smart*, 299 Ga. at 418 (2) (a). As to the second factor, and even if Rule 404 (b) evidence is relevant, a trial court must decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403." (Citation and punctuation omitted.) *Smart*, 299 Ga. at 418 (2) (b). Application of the Rule 403 balancing test is "a matter committed principally to the discretion of the trial courts," but "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) Id. at 418 (2) (b). Finally, we review the admission of Rule 404 (b) evidence only for "a clear abuse of discretion," making "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Citation and punctuation omitted.) *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).

Here, the trial court noted a "striking similarity" between Morgan's 2002 and 2003 prior acts and the assault at issue in this case, and we agree with this assessment. The 2002 attack showed that Morgan, when affronted by a romantic partner, would call on her male friends to help her subdue the partner before assaulting him with a

7

deadly weapon – precisely the pattern shown in the 2014 assault at issue here. Further, despite the fact that the 2003 vase-throwing incident did not include any enlistment of others, Morgan's habit of biting her victims is common to both that crime and this assault, and both of the prior acts involved robbery. Under these circumstances, we cannot say that the trial court abused its discretion when it concluded that the evidence of these prior acts was relevant to prove motive, intent, and identity; that the probative value of this evidence exceeded any undue prejudice; and that there was sufficient evidence that Morgan committed both acts to authorize its admission under Rules 404 (b) and 403. See *Brannon*, 298 Ga. at 607-608 (4) (affirming the admission of prior act evidence to prove intent, knowledge and identity; "when introduced to prove identity, the physical similarity of extrinsic offense evidence to the offense charged must be such that it marks the offenses as the handiwork of the accused") (citation and punctuation omitted); *Smart*, 299 Ga. at 419 (2) (b), (c) (evidence that defendant used "violence [as] a mechanism for control of his intimate partners" was more probative than prejudicial concerning the charged stabbing, and eyewitness testimony was sufficient to prove that the defendant committed the extrinsic acts admitted under Rules 404 (b) and 403).

3. Morgan argues that the trial court erred when it rejected Antonio's claim of the spousal marital privilege. As we have noted above, however, Antonio affirmatively withdrew this claim before he began his testimony. This issue is thus waived on appeal. *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019) (when appellant stated that he had no objection, he "affirmatively waived any claim of error" concerning the admission of evidence, "so there was no plain error") (footnote omitted).

4. Morgan also asserts that trial counsel was ineffective when he advised Antonio and the trial court that Antonio could not claim the spousal witness privilege. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citations and punctuation omitted.) *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). As

to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Finally, the question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) We first consider whether counsel performed deficiently when he concluded that Antonio could not claim the spousal witness privilege under OCGA § 24-5-503 because the 2002 and 2003 prior acts occurred before Antonio's 2006 marriage to Morgan.

The statute, which has no analog in the Federal Rules of Evidence,[2] provides in relevant part:

---

[2] OCGA § 24-5-503 replaced former OCGA § 24-9-23 (a), which provided in relevant part that a "[h]usband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other." Former subsection (b) created an exception, preserved in current subsection (b) (1), for "proceedings in which the husband or wife is charged with a crime against the person of a minor child[.]"

10

(a) *A husband and wife* shall be competent but *shall not be compellable* to give evidence in *any* criminal proceeding for or against each other.

(b) The privilege created by subsection (a) of this Code section . . . shall not apply in proceedings in which: (1) The husband or wife is charged with a crime against the person of a child under the age of 18, but such husband or wife shall be compellable to give evidence only on the specific act for which the accused is charged; (2) *The husband or wife is charged with a crime against his or her spouse;* (3) The husband or wife is charged with causing physical damage to property belonging to the husband and wife or to their separate property; or (4) *The alleged crime against his or her current spouse occurred prior to the lawful marriage of the husband and wife*.

(Emphasis supplied.) OCGA § 24-5-503 (a), (b). Under well-established rules of statutory construction, we

presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). "In our interpretation of statutes, we thus look to the text of

11

the provision in question, and its context within the larger legal framework, to discern the intent of the legislature in enacting it." (Citations omitted.) *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468) (2016).

The spousal witness privilege belongs to the witness spouse, not the accused, such that only the witness spouse can assert or waive the privilege. *Smith v. State*, 268 Ga. 860, 862 (3) (494 SE2d 322) (1998). The privilege is in effect only during a valid marriage and ends with divorce or death. See *Chadwick v. State*, 176 Ga. App. 296, 298 (2) (335 SE2d 674) (1985) (divorced spouse could not claim the privilege at the time of her ex-husband's criminal trial).

Trial counsel misunderstood the law when he concluded that Antonio was not entitled to invoke the spousal privilege. Morgan was not "charged with a crime against" Antonio; on the contrary, the indictments forming the basis of the "proceedings" to which the privilege could apply arose from the 2014 knife attack on the deceased victim, not on Antonio. OCGA § 24-5-503 (b) (2). Further, "[t]he alleged crime" at issue in those proceedings – again, the 2014 knife attack – did not occur "prior to the lawful marriage" of Morgan and Antonio, which occurred in 2006 and had not been terminated by death or divorce by the time of trial. OCGA § 24-5-503 (b) (4). Trial counsel thus performed deficiently when he concluded that Antonio

12

could be compelled to testify against Morgan, his wife, in this criminal proceeding arising from events taking place during their marriage, and when he waived Antonio's claim of the privilege on this basis. See *Kennebrew v. State*, 299 Ga. 864, 871 (2) (a) (792 SE2d 695) (2016) (counsel's "misunderstanding" of the law amounted to deficient performance); *Smith v. State*, 138 Ga. App. 683, 685 (4) (227 SE2d 84) (1976) (a trial court did not err in refusing to hold a wife in contempt for failing to testify when the former statute "plainly" provided that "a wife may not, over her objection, be forced to answer any questions or produce any other evidence which would either help or harm her spouse in any criminal proceeding").

(b) We must also consider whether Morgan suffered prejudice as the result of counsel's error. As we have noted in another case involving an erroneous determination of the extent of the spousal privilege that "[w]here . . . the error does not implicate any issue of constitutional dimension," our inquiry is whether it is "highly probable" that the error did not contribute to the verdict. (Punctuation and footnotes omitted.) *Phillips v. State*, 278 Ga. App. 439, 441 (1) (629 SE2d 130) (2006) (applying harmless error analysis to a trial court's error in compelling a wife

13

to testify against her husband).[3] In general, we noted, "reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error." (Footnote omitted.) Id. In the context of the current ineffectiveness claim, and in order to establish prejudice, Morgan "must establish a reasonable probability that [an] error would have been reversible on appeal" by showing that there is "a reasonable probability of a different outcome at trial had the error been prevented or corrected." *Griffin v. Terry*, 291 Ga. 326, 329-330 (2) (729 SE2d 334) (2012).

Morgan points to her acquittal on the murder and knife possession charges against her to support her assertion that the evidence that she committed aggravated assault on the deceased victim was not overwhelming. This contention ignores the facts that Morgan had a history, established by contemporaneous witnesses and police reports, of violence toward her romantic partners; that her assaults characteristically involved both calls for assistance from male friends, injuries including bruises and bloody wounds raised by beatings with a deadly weapon and/or bites, and robbery; that she urged her male relatives that they should come to her aid in punishing this

---

[3] As we noted in *Phillips*, "[t]he purpose of the spousal privilege . . . is to protect marital relationships. *State v. Peters*, 213 Ga. App. 352, 356-357 (444 SE2d 609) (1994)." 278 Ga. App. at 441 n. 2 (1).

14

victim "before [she] handle[d] it [her]self"; and that she admitted to stabbing the victim. There is no conflict here between the jury's implicit determination that Morgan did not intend to kill the victim and its determination that she did have the intent to assault him with a deadly weapon, and the record does not support an explanation of the assault by anyone but Morgan herself. We also note that Morgan has not contested the sufficiency of the evidence against her on this appeal.

The record shows that evidence concerning Morgan's 2003 attack on a former boyfriend was admitted in the form of testimony from not only Antonio but also his cousin, as well as a contemporary police report. In light of this evidence, Morgan cannot show prejudice from trial counsel's error in abandoning Antonio's claim of the spousal witness privilege, which assured the admission of what was merely cumulative evidence and was therefore harmless. See *Lee v. State*, 316 Ga. App. 227, 232-233 (2) (728 SE2d 847) (2012) (defendant acquitted of murder and felony murder but convicted of aggravated assault and other charges could not show prejudice arising from counsel's failure to object to cumulative hearsay testimony that the defendant had killed the victim).

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*

15